# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

MUSA KONATEH

**DEFENDANTS**

OMNIYA LLC, OMNIYA HOLDINGS LLC, GOODLEAP, LLC, VELOCITY ENERGY & HOME SOLUTIONS, INC.,COREY SANDONE,and BRANDON ETZLER.

**(b)** County of Residence of First Listed Plaintiff    PHILADELPHIA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    GLOUCESTER COUNTY, NJ
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Andrew M. Milz, Flitter Milz, 450 N. Narberth Ave., Suite 101, Narberth, PA 19072; 610-822-0782
Robert W. Ballenger, CLS, 1424 Chestnut St., Phila., PA 19102; 215-981-3700

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☑ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                        *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☑ 370 Other Fraud | **LABOR** | ☐ 840 Trademark ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☑ 1 Original Proceeding | ☐ 2 Removed from State Court |
| ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened |
| ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer |
| ☐ 8 Multidistrict Litigation - Direct File | |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332

Brief description of cause:
Unfair Trade Practices and Consumer Protection Law

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☑ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

N/A    *(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE
December 5, 2025

SIGNATURE OF ATTORNEY OF RECORD
/s/ Jody Lopez-Jacobs

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: __PHILADELPHIA, PA_____

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?           Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?     Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?     Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?     Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply?     Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☑ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☐ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)*:_____
- ☐ 7. Products Liability
- ☑ 8. All Other Diversity Cases: *(Please specify)*_____
  Consumer Protection

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☑ **does not** have implications beyond the parties before the court and ☐ **does** / ☑ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ **XXX**   Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐   None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| MUSA KONATEH | ) |
| | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. |
| OMNIYA LLC, OMNIYA HOLDINGS LLC, GOODLEAP, LLC, VELOCITY ENERGY & HOME SOLUTIONS, COREY SANDONE, BRANDON ETZLER | ) |
| | ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   OMNIYA LLC
200 Grove Rd., Suite C
West Deptford, NJ 08066

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   JODY THOMAS LOPEZ-JACOBS
FLITTER MILZ, PC
450 N. Narberth Avenue, Suite 101
Narberth, PA  19072

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____                    _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| MUSA KONATEH<br><br>*Plaintiff*<br>v.<br>OMNIYA LLC, OMNIYA HOLDINGS LLC, GOODLEAP, LLC,<br>VELOCITY ENERGY & HOME SOLUTIONS,<br>COREY SANDONE, BRANDON ETZLER<br><br>*Defendant* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   OMNIYA HOLDINGS LLC
30 Highland Ave.
Sicklerville, NJ 08081

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   JODY THOMAS LOPEZ-JACOBS
FLITTER MILZ, PC
450 N. Narberth Avenue, Suite 101
Narberth, PA  19072

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Eastern District of Pennsylvania

| | |
|---|---|
| MUSA KONATEH | ) |
| | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No. |
| OMNIYA LLC, OMNIYA HOLDINGS LLC, GOODLEAP, LLC, | ) |
| VELOCITY ENERGY & HOME SOLUTIONS, | ) |
| COREY SANDONE, BRANDON ETZLER | ) |
| _____ | ) |
| *Defendant* | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   GOODLEAP LLC
8781 Sierra College Blvd.
Roseville, CA 95661

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    JODY THOMAS LOPEZ-JACOBS
FLITTER MILZ, PC
450 N. Narberth Avenue, Suite 101
Narberth, PA  19072

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒  I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒  I returned the summons unexecuted because _____ ; or

❒  Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

MUSA KONATEH

*Plaintiff*

v.

OMNIYA LLC, OMNIYA HOLDINGS LLC, GOODLEAP, LLC, VELOCITY ENERGY & HOME SOLUTIONS, COREY SANDONE, BRANDON ETZLER

*Defendant*

)
)
)
)
)
)
)
)

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   VELOCITY ENERGY & HOME SOLUTIONS, INC.
549 S. Evergreen Ave.
Woodbury, NJ 08090

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   JODY THOMAS LOPEZ-JACOBS
FLITTER MILZ, PC
450 N. Narberth Avenue, Suite 101
Narberth, PA  19072

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑  I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑  I returned the summons unexecuted because _____ ; or

❑  Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                                 *Server's signature*

                                      _____
                                                 *Printed name and title*

                                      _____
                                                 *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| MUSA KONATEH | )<br>) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | )  Civil Action No. |
| OMNIYA LLC, OMNIYA HOLDINGS LLC, GOODLEAP, LLC, VELOCITY ENERGY & HOME SOLUTIONS, COREY SANDONE, BRANDON ETZLER | )<br>)<br>) |
| _____ | ) |
| *Defendant* | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  COREY SANDONE
2 Sherwood Lane
Glassboro, NJ 08028

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  JODY THOMAS LOPEZ-JACOBS
FLITTER MILZ, PC
450 N. Narberth Avenue, Suite 101
Narberth, PA  19072

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑  I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑  I returned the summons unexecuted because _____ ; or

❑  Other *(specify):*

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| MUSA KONATEH<br><br>_____<br>*Plaintiff*<br>v.<br>OMNIYA LLC, OMNIYA HOLDINGS LLC, GOODLEAP, LLC,<br>VELOCITY ENERGY & HOME SOLUTIONS, COREY<br>SANDONE, BRANDON ETZLER<br>_____<br>*Defendant* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   BRANDON ETZLER
30 Highland Ave.
Sicklerville, NJ 08081


A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   JODY THOMAS LOPEZ-JACOBS
FLITTER MILZ, PC
450 N. Narberth Avenue, Suite 101
Narberth, PA  19072


If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.


*CLERK OF COURT*


Date: _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒  I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒  I returned the summons unexecuted because _____ ; or

❒  Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                                         *Server's signature*

                                                         _____
                                                         *Printed name and title*

                                                         _____
                                                         *Server's address*

Additional information regarding attempted service, etc:

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MUSA KONATEH | : |
| Plaintiff, | : |
| | : |
| v. | : CIVIL ACTION NO: |
| | : JURY TRIAL DEMANDED |
| OMNIYA LLC, | : |
| OMNIYA HOLDINGS LLC, | : |
| GOODLEAP, LLC, | : |
| VELOCITY ENERGY & HOME SOLUTIONS, INC., | : |
| COREY SANDONE, | : |
| BRANDON ETZLER, | : |
| Defendants | : |

## COMPLAINT AND JURY DEMAND

Plaintiff Musa Konateh, by his undersigned attorneys Flitter Milz, P.C. and Community Legal Services, Inc., and for his Complaint against Defendants, alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for declaratory relief and damages for Defendants' violation of Pennsylvania's consumer protection laws, material breach of a negotiated prelitigation Settlement Agreement, and related torts.

2.      Defendants are a host of companies and individuals who are jointly involved in selling, installing, and financing solar panel systems.

1

3.      Plaintiff Musa Konateh and his wife, Haja Konateh, own a modest rowhouse in Philadelphia.

4.      Defendant Omniya LLC entered into a contract with Plaintiff at his home and, ostensibly, arranged to finance the installation through GoodLeap, LLC (hereinafter, "GoodLeap").

5.      However, unbeknownst to Plaintiff, Defendant Omniya LLC separately engaged Defendant Velocity Energy & Home Solutions, Inc. (hereinafter, "Velocity"), to receive direct payment from GoodLeap for the installation, and Defendant Omniya LLC forged Plaintiff's signature on contracts with GoodLeap and Velocity to consummate its fraud.

6.      The forged contracts are unenforceable. Nonetheless, Plaintiff timely cancelled the contracts pursuant to the applicable provisions of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq*.

7.      GoodLeap, however, disregards its status as a holder in due course and continues to deem Plaintiff bound by the forged loan even though GoodLeap knows the forged loan is invalid and unenforceable.

8.      Plaintiff and Defendant Omniya entered into a prelitigation Settlement Agreement to resolve Plaintiff's consumer fraud claims, which required Omniya LLC to pay GoodLeap for the forged loan. However, Omniya LLC—through Defendants Sandone and Etzler—materially breached the Settlement Agreement by failing to make payment and by seeking to dissolve Omniya LLC to avoid liability to Plaintiff.

9.      Accordingly, Plaintiff is constrained to bring this action for damages, declaratory relief, and other relief.

## PARTIES

10.     Plaintiff Musa Konateh is a low-income, 65-year-old immigrant residing with his wife at 6401 Guyer Avenue, Philadelphia, PA 19142 ("the property" or "the home").  Plaintiff immigrated to the United States in 2011 from Liberia.  His wife and five children immigrated to the United States in 2017 from Liberia.

11.     Defendant Omniya LLC is a New Jersey limited liability company formed on October 13, 2022, that was a licensed home improvement contractor in Pennsylvania, with a principal place of business at 200 Grove Rd., Suite C, West Deptford, NJ 08066.

12.     Defendant Omniya Holdings LLC ("Holdings") is a New Jersey limited liability company formed by Defendant Etzler on July 30, 2025, as a successor in interest to the business operated by Omniya LLC and as manager and owner of other affiliated entities.

13.     Hereinafter, Defendants Omniya LLC and Holdings are collectively referred to as "Omniya."

14.     Defendant Goodleap, LLC ("GoodLeap") is a limited liability corporation licensed to do business as a mortgage lender in Pennsylvania, with a principal place of business at 8781 Sierra College Blvd., Roseville, CA 95661.

15.     Defendant Velocity Energy & Home Solutions, Inc. ("Velocity") is a New Jersey corporation licensed to do business as a home improvement contractor in Pennsylvania, with a principal place of business at 549 S Evergreen Ave., Woodbury, NJ 08090.

16.     Defendant Corey Sandone is a New Jersey resident and a founder, member and/or employee of Omniya LLC, Holdings, and other related companies including Omniya Frontline

LLC and Omniya Sustainable Solutions LLC.  At all times relevant hereto, Defendant Sandone

has been the CEO of Omniya and a member of each of the Omniya-affiliated entities.

17.    Defendant Brandon Etzler is a New Jersey resident and a founder, member and

employee of Omniya.

18.    Defendants Omniya, Velocity, and GoodLeap are participants in a joint venture to

finance the sale and installation of solar panel systems, whereby each made contributions of

capital, materials, services, or knowledge, including but not limited to sales services (Omniya),

installation services (Velocity), and financial services (GoodLeap), all participants share in the

profits from the sale, installation, and financing of the solar panel systems, and all decisions

regarding the core activities, finances, and strategic direction of the venture are made jointly or

by mutual agreement, with no single party having unilateral control over the essential aspects of

the venture.

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because

there is complete diversity of citizenship between the Plaintiff and the Defendants, and the

amount in controversy exceeds $75,000.  Diversity of citizenship exists because Plaintiff is a

citizen of Pennsylvania and Defendants are citizens of New Jersey or California.

20.    Personal jurisdiction over Defendants is proper.  Defendants engaged in

marketing and performance of a home improvement contract and associated financing for the

installation of a solar array in the Commonwealth of Pennsylvania and this Judicial District.  By

their actions, Defendants have committed violations of Pennsylvania law and caused Plaintiff

harm in this Commonwealth and District.

21.     Pursuant to 28 U.S.C. §1391, venue in this District is proper because a substantial part of the events giving rise to the claims occurred in this District, where Defendants or their affiliates installed the solar array on Plaintiff's Philadelphia residence.

22.     This Court has the authority to provide declaratory relief to Plaintiff pursuant to 28 U.S.C. §2201 and to provide Plaintiff such further relief as may be necessary or proper pursuant to 28 U.S.C. §2202.

## FACTUAL AVERMENTS

### *Plaintiff agrees to the installation of a solar array under false pretenses*

23.     Plaintiff and his wife have resided in the property since purchasing it in 2022.

24.     Plaintiff uses electricity for all of his energy needs at the property, including for heating and cooking.

25.     Faced with high monthly electricity bills, Plaintiff decided to explore the option of adding solar panels to his home and contacted Omniya.

26.     Upon information and belief, at all times relevant hereto, Omniya has been owned, operated and managed by Defendants Sandone and Etzler for the same purposes, namely, the management and operation of the Omniya-affiliated entities roles in the sale and installation of home improvement and renewable energy equipment and services such as solar panels and associated products.

27.     In February 2024, Omniya's employee and agent, Corey Degree, visited Plaintiff's home on three occasions.  Mr. Degree inspected Plaintiff's home and appliances and put together a solar proposal describing the system and basic loan terms to finance its installation.

28.     Mr. Degree assured Plaintiff that the proposed solar installation would generate sufficient electricity for all of his home appliances.  Indeed, Mr. Degree assured Plaintiff that he would once again be able to use the clothes dryer that the family didn't use in an effort to reduce electricity usage.

29.     Plaintiff asked Mr. Degree what would happen if there were problems with the system after it was installed, and Mr. Degree assured Plaintiff that he would be able to assist if issues arose.

30.     Mr. Degree's representations were false.

31.     Based on Mr. Degree's representations, and in reliance upon his assurance and the solar proposal's guarantee that the system would offset 100% of Plaintiff's electric utility usage, Plaintiff used a computer tablet supplied by Mr. Degree to sign the Omniya solar proposal on February 24, 2024.  This document is attached hereto as Exhibit "A."

32.     The Omniya solar proposal bears a Pennsylvania Home Improvement Contractor License Number registered to Velocity, No. 171823.

33.     Plaintiff never received the Omniya solar proposal in printed, written form.

34.     Plaintiff understood that Omniya would arrange financing for the solar installation, as set forth in the solar proposal, but Plaintiff dealt exclusively with Omniya and had no interaction with Defendants GoodLeap or Velocity.

35.     Upon information and belief, GoodLeap's loan software enabled Omniya to apply Plaintiff's electronic signature to the GoodLeap loan, pursuant to which Velocity would receive payment, without Plaintiff's knowledge and consent.

36.     Whether Omniya had GoodLeap's express or implied permission to utilize its loan software to create the appearance of a loan between Plaintiff and GoodLeap pursuant to which Velocity would receive payment will be determined in discovery.

37.     On or around April 19, 2024, the solar panel system was installed without Plaintiff signing any other contracts, including any contract to finance the transaction.

38.     After signing the Omniya solar proposal, Plaintiff received an email from GoodLeap containing a welcome letter and loan closing certificate.  Copies of these documents are attached as Exhibit "B."

39.     Plaintiff never agreed with Omniya nor GoodLeap that they could provide documents electronically.

40.     Plaintiff never signed or received a loan agreement from GoodLeap, nor did Plaintiff agree with GoodLeap to the electronic provision of documents.

41.     On May 4, 2024, GoodLeap recorded a UCC Financing Statement against the property purporting to take a security interest in Plaintiff's title and interest in the solar panels and associated equipment.  A copy of this document is attached as Exhibit "C."

42.     Plaintiff assumed that Omniya had arranged financing from GoodLeap pursuant to the terms of the solar proposal, so began making monthly payments in July 2024, as set forth in the loan closing certificate.

43.     On July 24, 2024, PECO Energy Company ("PECO") installed a bidirectional meter in order for the solar array to generate electricity.

***The solar panel system fails to perform as promised, so Plaintiff complains to the
Pennsylvania Public Utility Commission***

44.    Contrary to Plaintiff's expectations, and the promises made by Omniya and
reflected in solar proposal, Plaintiff's electric bills remained unaffordable after the solar array
began to generate electricity.

45.    In reliance upon Omniya's representations, Plaintiff called Mr. Degree who
assured Plaintiff that the solar panels were working and that any problems with his electric bill
were the fault of PECO.  On or around December 15, 2024, Plaintiff and Mr. Degree went to
PECO's office to try to resolve the matter but were unsuccessful.

46.    On December 20, 2024, based on Mr. Degree's assurances, Plaintiff sought
assistance from the Pennsylvania Public Utility Commission because he believed PECO was not
providing him credits for the energy his solar array generated.

47.    On February 18, 2025, Plaintiff received the Informal Complaint Decision by the
Pennsylvania Public Utility Commission ("PUC Decision"), explaining that his solar panels were
generating only a fraction of the electricity his home required.  The PUC Decision is attached
hereto as Exhibit "D."

48.    The Omniya solar proposal estimated the solar array would produce 5,884 kWh of
electricity annually, and that Plaintiff's annual electricity consumption was 5,884 kWh
electricity, thus offsetting 100% of Plaintiff's electric usage.

49.    In contrast, the PUC Decision cited PECO records showing that Plaintiff's annual
usage was 19,289 kWh from 12/13/2023 to 12/14/2024 and 21,750 kWh from 12/14/2022 to
12/13/2023.

50.     Rather than producing all of Plaintiff's electricity, the solar installation Omniya designed produces less than one third of the amount of electricity Plaintiff needs for his home.

***Plaintiff cancels the fraudulently procured and forged contracts***

51.     On May 27, 2025, Plaintiff, by and through his counsel, sent written Notice of Cancellation to Defendants Omniya LLC, GoodLeap, and Velocity (*i.e.* the company associated with the home improvement contractor license on the Omniya solar proposal). The Notice of Cancellation was sent by certified mail, return receipt requested.  Copies of Notice of Cancellation letters sent to Defendants Omniya, Velocity and GoodLeap, certified mail receipts, and returns (from Defendants Omniya and GoodLeap only) are attached as Exhibit "E."

52.     The letter sent to Defendant Velocity was returned as unclaimed as shown in Exhibit "E."

53.     In the Notice of Cancellation, Plaintiff's counsel advised Defendants Omniya, Velocity and GoodLeap as follows:

> Mr. Konateh hereby makes available to you at his residence in substantially as good condition as when received, any goods delivered to him under these transactions.  Please notify me or Mr. Konateh whether you intend to repossess or to abandon any shipped or delivered goods.  If you elect to repossess but do not do so within twenty (20) days of the date of this notice of cancellation, Mr. Konateh will retain or dispose of the goods without any further obligation.

> Pursuant to the CPL, 73 P.S. § 201-7(c), you must honor this notice and, within ten (10) days after the receipt of this notice, (i) refund all payments made under the contract or sale; (ii) return any goods or property traded in, in substantially as good condition as when received by you; and (iii) cancel and return any negotiable instrument executed by Mr. Konateh in connection with the contract or sale and take any action necessary or appropriate to terminate promptly any security interest (i.e., the UCC Financing Statement recorded on May 8, 2024) associated with the transaction(s).

54.     On June 11, 2025, a GoodLeap representative sent an email to Plaintiff's counsel with two attachments, the GoodLeap loan attached as Exhibit "F" and the Velocity solar proposal attached as Exhibit "G."

55.     Prior to June 11, 2025, Plaintiff had never received the GoodLeap loan and was unaware of the existence of the forged Velocity solar proposal.

56.     The purported signature of Plaintiff on the GoodLeap loan is not his signature. Upon information and belief, Omniya utilized GoodLeap's loan software and applied Plaintiff's signature to loan documents with GoodLeap without Plaintiff's knowledge or consent.

57.     GoodLeap's loan is dated February 24, 2024, and identifies Plaintiff's contractor as Velocity.

58.     Upon information and belief, after Plaintiff signed the Omniya solar proposal, and unbeknownst to Plaintiff, Omniya forged Plaintiff's name on the Velocity solar proposal, which is dated two days after Plaintiff signed the February 24, 2024 Omniya solar proposal, and two days after the February 24, 2024 GoodLeap loan.

59.     Despite rescission and cancellation, Defendant GoodLeap continued to withdraw funds from Plaintiff's wife's bank account until Plaintiff's wife called to specifically terminate such authorization on July 15, 2025.

***GoodLeap's, Omniya's, and Velocity's contract documents fail to comply with the requirements of Pennsylvania law and are unenforceable***

60.     Pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("CPL"), 73 P.S. § 201-7, Defendants Omniya and GoodLeap were required to provide

Plaintiff with the notice of his right to cancel their respective transactions within three full business days following the day of the transactions.

61.    Although the Velocity contract is a forgery that was never provided to Plaintiff, it fails to provide notice of cancellation consistent with Pennsylvania law.

62.    The CPL sets out the contents and formatting requirements of such a notice and requires a fully completed copy of any contract relating to the sale of goods or services to be provided "at the time of the sale or contract with the buyer."  73 P.S. § 201-7(b).

63.    Defendants Omniya, Velocity and GoodLeap failed to provide Plaintiff with fully completed contracts and notices that comply with the above-referenced requirements.

64.    With respect to Defendants Omniya, Velocity and GoodLeap, Plaintiff has never received fully completed contracts because, to the extent contracts were provided at all, they were provided via email and so were not in print and do not include an easily detachable form, in duplicate, of the CPL's required notice of cancellation.

65.    As to Defendant Omniya, its solar proposal includes a section describing the right to cancel which appears intended to comply with NJSA 56:8-136 *et seq*., governing New Jersey home improvement contractors.

66.    Omniya's solar proposal does not fulfill the requirements of the CPL because, among other things:

    a.  It does not track the statutory language of the CPL regarding notice of cancellation;

b.  It requires delivery of the notice of cancellation by registered or certified mail or hand delivery (the CPL requires only that notice be mailed or delivered);

c.  It doesn't include two detachable copies of the notice of cancellation required by the CPL; and,

d.  The statement of the right to cancel is not in immediate proximity to the signature line as required by the CPL.

67.     As to Defendant GoodLeap, Plaintiff denies signing a loan agreement with GoodLeap, but even if he had done so, GoodLeap's loan was not provided to Plaintiff at the time he signed Omniya's solar proposal and, indeed, GoodLeap's loan is premised upon the forged installation contract between Plaintiff and Defendant Velocity.

68.     Moreover, if entered into in connection with a supposed agreement between Plaintiff and Velocity dated February 26, 2024, GoodLeap's loan fails to provide the full three business days for cancellation required by the CPL.

69.     Furthermore, the DocuSign digital signature verification indicates the GoodLeap loan was signed on February 27, 2024, revealing that GoodLeap's Notice of Cancellation (indicating the notice is due on February 28, 2024), did not provide three business days for cancellation as required by the CPL.

70.     As to Defendant Velocity, Plaintiff denies signing a solar proposal with Velocity and submits that his name has been added to this document illegally.

71.     Nonetheless, Velocity's solar proposal includes a section describing the right to cancel which appears intended to comply with NJSA 56:8-136 *et seq.*, governing home improvement contractors.

72.     Velocity's solar proposal does not fulfill the requirements of the CPL because, among other things:

    a.  It does not track the statutory language of the CPL regarding notice of cancellation;

    b.  It requires delivery of the notice of cancellation by registered or certified mail or hand delivery (the CPL requires only that notice be mailed or delivered);

    c.  It doesn't include two detachable copies of the notice of cancellation required by the CPL;

    d.  Its notice of cancellation is incomplete because it fails to identify the date of the transaction, name and address of seller, and date by which Plaintiff may cancel; and,

    e.  Its notice of cancellation indicates that the notice should be provided to an entity unknown to Plaintiff, identified as "Clean Cut General Contractors."

73.     Because Plaintiff did not receive fully completed contracts with a completed form, in duplicate, of the CPL's required notice of cancellation in the manner and form required by the CPL, Plaintiff has at all times retained the right to cancel the transactions with Defendants Omniya, Velocity and GoodLeap.  73 P.S. § 201-7(e).

74.     Defendant Omniya did not notify Plaintiff or counsel that it intended to repossess or abandon any shipped or delivered goods.

75.     Defendant GoodLeap did not notify Plaintiff or counsel that it intended to refund payments Plaintiff made to it or terminate its security interest (UCC Financing Statement) in the solar panels.

76.     Pursuant to the CPL, by failing to respond to the notice within ten days and by failing to repossess the goods within 20 days, Defendants Omniya and GoodLeap forfeited all rights to the goods, including the solar panels and associated equipment, and are obligated to refund sums tendered by Plaintiff to GoodLeap and remove their security interest.  73 P.S. § 201-7(i).

***Plaintiff settles his claims against Omniya, who never intended to satisfy its obligations under the Settlement Agreement***

77.     In an effort to avoid this litigation, Plaintiff and Defendant Omniya negotiated a Settlement Agreement on July 23, 2025, pursuant to which Omniya agreed to make payment to GoodLeap in monthly installments over a period of 24 months in order to completely satisfy the amount alleged by GoodLeap to be owed by Plaintiff.  The Settlement Agreement is attached as Exhibit "H."

78.     Defendants Sandone and Etzler had actual knowledge of the existence and terms of the Settlement Agreement.

79.     As set forth in Section 5 of the Settlement Agreement, Omniya provided Plaintiff with financial assurances of its solvency as follows:

a.  Company is solvent, is able to pay its debts as they become due, has capital sufficient to carry on its business as presently conducted and proposed to be conducted, and owns property and assets which have both a fair value and a fair saleable value in excess of the amount required to pay its debts as they become due.

b.  Company knows of no eventualities that would prevent its performance of the obligations set forth in this Agreement.

c.  Company does not have any pending, contemplated or ongoing administrative or judicial proceedings which are material to its business or finances, and is not currently subject to and does not anticipate becoming subject to any associated litigation, consent orders or agreements with any state or federal regulatory agency.

80.    As set forth in Section 5 of the Settlement Agreement, Omniya warranted as follows: "Company will not commence any bankruptcy, insolvency, or similar proceeding prior to the Completion Date."

81.    Unbeknownst to Plaintiff, Defendants Sandone and Etzler prepared to deprive Plaintiff of the consideration bargained for in the Settlement Agreement and evade liability to Plaintiff by forming Holdings on July 30, 2025, in order to continue to carry out the business they performed as Omniya.  A copy of Certificate of Formation of Omniya Holdings LLC is attached as Exhibit "I."

82.    Defendant Holdings' Certificate of Formation explicitly establishes Holdings as "a management and ownership company for multiple home services and renewable energy businesses."

83.    Holdings was established to enable its members, Defendants Sandone and Etzler, to continue to manage and own the solar and renewable energy business previously conducted by Omniya through the new company, Holdings, and the other Omniya- affiliated businesses (Omniya Frontline LLC and Omniya Sustainable Solutions LLC).

84.    Four one-time payments to GoodLeap were made pursuant to the Settlement Agreement from three different accounts as shown in the attached Exhibit "J."

85.    The use of three separate accounts to make payments required by the Settlement Agreement indicates that Defendants Sandone and/or Etzler commingled personal and/or business accounts of the Omniya-affiliated entities, in disregard of Omniya LLC's separate corporate existence and legal obligations.

86.    Two months after executing the Settlement Agreement, and after forming Holdings to continue Omniya's business, Defendant Sandone filed a Certificate of Dissolution of Omniya LLC on September 24, 2025.  A copy of the Certificate of Dissolution of Omniya LLC is attached as Exhibit "K."

87.    Defendants Omniya, Sandone and/or Etzler failed to make the payment due on October 26, 2025, and have made no further payments thereafter.

88.    Upon discovering that Defendant Omniya had failed to make timely payment, counsel for Plaintiff notified Defendant Omniya, with copy to Defendants Sandone and Etzler, of their breach by letter dated November 12, 2025, as provided in Section 14 of the Settlement Agreement.  A copy of that letter is attached as Exhibit "L."

## COUNT 1: DECLARATORY RELIEF
### (against Omniya, Velocity, and GoodLeap)

89.     All previous averments are incorporated herein by reference.

90.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201 et seq., this Court is authorized to "declare the rights and other legal relations of any interested party seeking [a] declaration."

91.     Pursuant to the Pennsylvania's Declaratory Judgments Act, 42 Pa. C.S.A. § 7531 *et seq.*, this Court is empowered to enter declaratory judgments to determine rights, status, and other legal relations including determinations as to the validity of contracts and the rights of parties thereunder.

92.     As described above, the Velocity contract was fabricated by Defendants, and never signed or agreed to by Plaintiff.

93.     As described above, Plaintiff cancelled the purported transactions with GoodLeap, Omniya, and Velocity by sending them each a Notice of Cancellation on May 27, 2025.

94.     As described above, Defendant Omniya did not repossess the goods within 20 days and Defendant GoodLeap did not refund payments and remove its security interest within 10 days.

**WHEREFORE,** Plaintiff requests that this Court:

> a.   Enter judgment in favor of Plaintiff and against Omniya, GoodLeap, and Velocity.

b.  Declare the Velocity and Goodleap contracts are void, or in the alternative, declare that Plaintiff was entitled to, and validly did, cancel the purported contracts and that he has no payment obligation pursuant to them.

c.  Declare that Plaintiff was entitled to, and validly did, cancel the Omniya contract and that he has no payment obligation to Omniya.

d.  Require GoodLeap to refund all payments made to GoodLeap by Plaintiff or his wife.

e.  Require GoodLeap to terminate its security interest (UCC Financing Statement) in the solar panel system.

f.  Award the costs of this action and such other relief as the Court deems necessary and proper.

## COUNT 2: UNFAIR TRADE PRACTICES
## (against Omniya, Velocity, and GoodLeap)

95.  All previous averments are incorporated herein by reference.

96.  The Omniya solar proposal and GoodLeap loan constitute and reflect the purchase of goods and services primarily for personal, family or household purposes as defined in the CPL. 73 P.S. § 201-9.2.

97.  Defendants' activities in connection with the sale and installation of the solar panels and the arranging of a loan to cover the cost of the sale and installation constitute the conduct of "trade and commerce" as defined in the CPL. 73 P.S. § 201-2.

98. The goods or services provided by Omniya had a sale price of $41,070.56, which amount is in excess of $25.00.

99. Likewise, the goods or services provided by GoodLeap had a sale price of $41,070.56, which amount is in excess of $25.00.

100. Pursuant to GoodLeap's loan agreement, Velocity was paid $41,070.56 for the goods and services, which amount is in excess of $25.00.

101. As described above, the goods and services provided by Defendants Omniya, Velocity and GoodLeap were sold or contracted as a result of or in connection with contact with Plaintiff at his residence, either in person or by telephone, within the meaning of the CPL. 73 P.S. § 201-7.

102. The sales presentation of Omniya, during which its employee, Mr. Degree, assured Plaintiff that the solar installation would offset 100% of his home electricity needs, such promise being reflected in the solar proposal, constituted unfair or deceptive acts or practices under the CPL, 73 P.S. § 201-2(4), which prohibits, among other things:

    a. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have. 73 P.S. § 201-2(4)(v).

    b. Making repairs, improvements or replacements on tangible, real or personal property, of a nature or quality inferior to or below the standard of that agreed to in writing. 73 P.S. § 201-2(4)(xvi).

    c. Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding. 73 P.S. § 201-2(4)(xxi).

103.    Defendant Omniya's actions, as described above, in forging a separate solar proposal between Plaintiff and Velocity and affixing Plaintiff's name in cursive font thereon, in order to impermissibly assign performance and payment to Velocity for installation of the solar array, despite Plaintiff's exclusive dealing with Omniya, constituted unfair or deceptive acts or practices under the CPL, 73 P.S. § 201-2(4), which prohibits, among other things:

      a.   Passing off goods or services as those of another.  73 P.S. § 201-2(4)(i).

      b.   Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services.  73 P.S. § 201-2(4)(ii).

      c.   Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding. 73 P.S. § 201-2(4)(xxi).

104.    Plaintiff relied upon the deceptive representations of Omniya as part of his decision-making process to go forward with the transaction.

105.    As described above, Plaintiff continued to rely upon Omniya, and its agent Mr. Degree, to correct alleged errors by PECO when, in fact, Omniya simply misled Plaintiff into believing that the solar system would be adequate to meet his electricity needs.

106.    Defendant GoodLeap continues to deem Plaintiff bound by the forged loan, continued to collect payments from Plaintiff's bank account, and has refused to remove the UCC Financing Statement associated with the solar panel system on Plaintiff's home, despite GoodLeap being on notice that the loan is forged, and despite Plaintiff sending Notice of Cancellation to GoodLeap, which constitutes unfair or deceptive acts or practices under the CPL, 73 P.S. § 201-2(4), which prohibits, among other things:

a.  Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding. 73 P.S. § 201-2(4)(xxi).

b.  Using any false, deceptive or misleading representation or means in connection with the collection of any alleged debt. 73 P.S. § 2270.4(b)(5).

c.  Using unfair or unconscionable means to collect or attempt to collect any alleged debt. 73 P.S. § 2270.4(b)(6).

107.    Defendant Velocity continues to deem Plaintiff bound by the forged loan despite being on notice that the loan is forged, and despite Plaintiff sending Notice of Cancellation to Velocity, which constitutes unfair or deceptive acts or practices under the CPL, 73 P.S. § 201-2(4), which prohibits, among other things:

a.  Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding. 73 P.S. § 201-2(4)(xxi).

108.    As a result of the unfair and deceptive acts and practices of Defendants Omniya, Velocity and GoodLeap, Plaintiff has suffered an ascertainable loss in the amount of the loan and the monthly payments made to GoodLeap since July 2024, including payments withdrawn from Plaintiff's wife's account after Plaintiff rescinded and canceled the contracts and transaction.

109.    In addition, as a result of Defendants' unfair and deceptive acts and practices, Plaintiff has suffered further damages including headaches, nausea, fright, anxiety, emotional distress, depression, and loss of sleep.

110.    Pursuant to the CPL, 73 P.S. §201-9.2, a person who suffers an ascertainable loss of money or property as a result of the use or employment of an unfair or deceptive act or practice prohibited by the Act may bring an action to recover actual damages or $100, whichever

is greater, and a Court may, in addition to actual damages, award treble damages, costs and reasonable attorney's fees, and such additional relief as it deems necessary or proper.

**WHEREFORE,** Plaintiff requests that this Court:

      a.   Award Plaintiff actual and treble damages against Defendants Omniya, GoodLeap and Velocity, in an amount to be determined at trial.

      b.   Award reasonable attorneys' fees to Plaintiff's counsel.

      c.   Award the costs of this action and such other relief as the Court deems necessary and proper.

<u>**COUNT 3: SLANDER OF TITLE**</u>
<u>**(against GoodLeap)**</u>

111.    All previous averments are incorporated herein by reference.

112.    As described above, on May 8, 2024, a UCC Financing Statement was recorded against the property by Defendant GoodLeap, purporting to take a security interest in Plaintiff's title and interest in the solar panels and associated equipment.

113.    As described above, GoodLeap's loan is predicated upon the existence of a contract between Plaintiff and Velocity, which does not exist, making GoodLeap's security interest invalid.

114.    Furthermore, upon Plaintiff's cancellation of the purported loan transaction and GoodLeap's failure to respond to the Notice of Cancellation, GoodLeap had actual knowledge that its UCC Financing Statement could no longer constitute a lien on the property.

115.    Nonetheless, Goodleap failed and refused, even after Plaintiff cancelled the purported loan transaction, to release the UCC Financing Statement of record.

116.    Goodleap knew or should have known that upon cancellation of the purported loan transaction and the failure to respond to the Notice of Cancellation, the UCC Financing Statement was no longer valid and must be released of record.

117.    The continued existence of record of an unreleased UCC Financing Statement is of a disparaging nature that could foreseeably impair the value of the property in the estimation of others.

118.    As a result of Goodleap's continued failure to release the UCC Financing Statement, Plaintiff has suffered damages, in that the value of equity in his home is diminished by the amount of the remaining balance of the cancelled loan, the precise amount of which will be determined in discovery.

**WHEREFORE,** Plaintiff requests that this Court:

a.   Enter judgment in favor of Plaintiff and against Defendant Goodleap.

b.   Award Plaintiff damages against Defendant Goodleap in an amount to be determined at trial.

c.   Award Plaintiff the costs of this action and such other relief that this Court deems necessary and proper.

## COUNT 4: FRAUDULENT INDUCEMENT, FRAUDULENT CONCEALMENT, AND FRAUDULENT NONDISCLOSURE
### (against Omniya)

119.    All previous averments are incorporated herein by reference.

120.    Omniya crafted a scheme to utilize GoodLeap's loan software and fabricate documents in order to cause Plaintiff to incur massive indebtedness for a solar panel installation

that failed to deliver the contractually-agreed upon promise to 100% offset Plaintiff's electricity costs.

121.    The solar panels Omniya promised to produce 100% of Plaintiff's necessary home electricity are incapable of producing even a third of it.

122.    Plaintiff agreed to the Omniya solar proposal based on the stated assurances and written promise that the installation of solar panels would produce adequate electricity to power his home and enable him to use appliances his family had stopped using to save power costs.

123.    Omniya's stated and written promises were false and made with actual knowledge of their falsity or reckless disregard for the truth.

124.    Omniya's false statements were made to induce Plaintiff to agree to the solar proposal.

125.    Plaintiff understood that Omniya would arrange financing, as described in the solar proposal, but did not have contact with or enter into a contract with GoodLeap or Velocity.

126.    At no point did Omniya show any loan documents or paperwork to Plaintiff other than the simplified loan terms contained in the solar proposal. This was intentional to obscure Omniya's use of the GoodLeap loan software to conceal the loan terms and otherwise fabricate agreements involving GoodLeap, Velocity and Plaintiff.

127.    Omniya, by and through its agents and/or employees, illegally assigned performance of Omniya's services to Velocity without Plaintiff's written consent and in violation of the signed solar proposal.

128.    Omniya then fabricated a forged installation agreement between Plaintiff and Velocity, dated two days after Plaintiff's execution of the Omniya solar proposal, to serve as the

operative service contract which, when performed, would be used to saddle Plaintiff with $41,070.56 in principal indebtedness to GoodLeap.

129.    Omniya's scheme was only fully revealed after GoodLeap provided copies of its loan and the Velocity solar proposal to Plaintiff's counsel on June 11, 2025, identifying Velocity as the installation contractor to whom GoodLeap made payment.

130.    Defendant Omniya concealed its relationships with Velocity and GoodLeap in the conduct of business with Plaintiff.

131.    At no point did Omniya disclose to Plaintiff the true nature of its relationship with Velocity or that its facilitation of financing would involve the addition of Plaintiff's electronic signature to a separate contract, unseen by Plaintiff, with GoodLeap.

132.    A reasonable and honest person in Omniya's position would have disclosed the relationship with Defendant Velocity and the nature of the transaction, the existence of a loan, and the actual loan documents.

133.    As a result of the representations, omissions and actions of Omniya, Plaintiff became ostensibly obligated to Goodleap pursuant to a loan he never received for a solar installation that does not perform as promised, the value of his home has been reduced, and he has experienced headaches, nausea, fright, anxiety, emotional distress, depression, and loss of sleep.

**WHEREFORE,** Plaintiff requests that this Court:

    a.   Enter judgment in favor of Plaintiff and against Omniya.

    b.   Award Plaintiff damages against Omniya.

    c.  Award Plaintiff the costs of this action and such other relief that this Court

deems necessary and proper.


## COUNT 5: NEGLIGENCE
## (against GoodLeap)

134.    All previous averments are incorporated herein by reference.

135.    GoodLeap's loan, dated February 24, 2024, identifies Velocity as Plaintiff's

installation contractor.

136.    GoodLeap's loan, dated February 24, 2024, goes on to state:

Your solar installation contractor ("Contractor") has provided us with a copy of a
signed home improvement agreement between you and the Contractor (the "Home
Improvement Agreement") under which the Contractor will install solar panels, inverters,
racking systems, wiring, electrical and mechanical connections, metering, monitoring
and/or other distributed generation interconnect equipment ("Solar Equipment") and may,
in addition or instead, install new roofs and related roofing materials, battery storage
equipment, electrical vehicle power charging equipment, and thermostat equipment, and
provide landscaping services to accommodate the solar system (together with the Solar
Equipment, "Purchased Goods") at your home ("Residence") located at the Residence
Address listed above.

137.    GoodLeap's loan bears a date two days before the date shown on the fabricated,

unsigned Velocity contract.

138.    Yet GoodLeap's loan contains embedded DocuSign signature data revealing the

electronic signature (which Plaintiff maintains was entered by Omniya without his knowledge or

consent) was obtained on February 27, 2024.

26

139.    In ostensibly loaning more than $40,000 to Plaintiff for solar equipment installation, GoodLeap had a duty of care to verify the existence of a valid home improvement agreement.

140.    GoodLeap violated its duty of care by failing to recognize, as a reasonable person would in the conduct of business, that on February 24, 2024, the date shown on its loan agreement, there was no valid home improvement contract between Plaintiff and Velocity.

141.    GoodLeap violated its duty of care by failing to take reasonable and necessary steps to ensure that its loan software could not be used by Omniya in a manner that falsely produced a GoodLeap loan premised upon a nonexistent home improvement agreement with Velocity.

142.    GoodLeap further violated its duty of care by failing to ensure that its electronic loan software could not be manipulated to enter an effective date on the loan agreement, utilized for purposes of calculating the three business day period for cancellation, that predates the date upon which an electronic signature was purportedly attained.

143.    Upon receipt of the subsequently-dated, February 26, 2024, unsigned solar agreement, purportedly between Velocity and Plaintiff, GoodLeap violated its duty of care by failing to undertake the basic and reasonable review necessary to observe that the Velocity contract is a forgery.

144.    As a result of GoodLeap's breach of its duty of care, Plaintiff has incurred damages in the form of monthly installment payments to GoodLeap that are premised upon a loan and installation contract Plaintiff never signed or received.

145.    GoodLeap's negligence in financing the solar equipment is a proximate cause of Plaintiff's damages.

**WHEREFORE,** Plaintiff requests that this Court:

    a.    Enter judgment in favor of Plaintiff and against GoodLeap.

    b.    Award Plaintiff damages against GoodLeap.

    c.    Award Plaintiff the costs of this action and such other relief that this Court deems necessary and proper.

## COUNT 6: BREACH OF SETTLEMENT (NONPAYMENT)
### (against Omniya)

146.    All previous averments are incorporated herein by reference.

147.    Defendant Omniya failed to make timely payment to GoodLeap as required by the Settlement Agreement, resulting in a default of the Settlement Agreement.

148.    Omniya's failure to make required payment entitles Plaintiff to indemnification as set forth in Section 7(b) of the Settlement Agreement as well as reasonable attorneys' fees and court costs.

**WHEREFORE,** Plaintiff requests that this Court:

    a.    Award Plaintiff damages in the amount of the principal indebtedness outstanding pursuant to the GoodLeap Financing Agreement.

    b.    Award Plaintiff damages in the amount of any accumulated unpaid interest pursuant to the GoodLeap Financing Agreement.

    c.    Award Plaintiff damages associated with any action taken by GoodLeap against Plaintiff as provided in Section 7(b) of the Settlement Agreement.

    d.  Award reasonable attorneys' fees and court costs to Plaintiff's counsel.

    e.  Award such other relief as the Court deems necessary and proper.

### COUNT 7: BREACH OF SETTLEMENT (OMNIYA DISSOLUTION)
### (against Omniya)

149.    All previous averments are incorporated herein by reference.

150.    On behalf of Defendant Omniya, Defendant Sandone filed a Certificate of Dissolution of Omniya two months after entering into the Settlement Agreement.

151.    Omniya's commencement of dissolution constitutes a default entitling Plaintiff to indemnification as set forth in Section 7(b) of the Settlement Agreement as well as reasonable attorneys' fees and court costs.

**WHEREFORE,** Plaintiff requests that this Court:

    a.  Award Plaintiff damages in the amount of the principal indebtedness outstanding pursuant to the GoodLeap Financing Agreement.

    b.  Award Plaintiff damages in the amount of any accumulated unpaid interest pursuant to the GoodLeap Financing Agreement.

    c.  Award Plaintiff damages associated with any action taken by GoodLeap against Plaintiff as provided in Section 7(b) of the Settlement Agreement.

    d.  Award reasonable attorneys' fees and court costs to Plaintiff's counsel.

    e.  Award such other relief as the Court deems necessary and proper.

### COUNT 8: PIERCING CORPORATE VEIL
### (against Sandone and Etzler)

152.    All previous averments are incorporated herein by reference.

153.    Defendants Sandone and Etzler have failed to observe the independence of Defendant Omniya LLC and Holdings, and have treated these corporate and business entities as their personal instrumentalities and alter egos.

154.    Defendant Etzler's formation of Holdings one week after the execution of the Settlement Agreement and Defendant Sandone's subsequent filing of a Certificate of Dissolution of Omniya LLC reveal Defendant Sandone and Etzler's scheme to impermissibly transfer Omniya's business and assets, including the use of the trade name "Omniya," in their management and operation of the controlled group.

155.    Defendants Sandone and Etzler formed Holdings as a mere tool or business conduit through which they would continue to conduct Omniya LLC's business but evade liability to Plaintiff.

156.    At all times relevant, Defendants Sandone and Etzler have been the moving force behind the overlapping operations of the commonly controlled Omniya-affiliated entities, Omniya LLC, Holdings, Omniya Frontline LLC and Omniya Sustainable Solutions LLC.

157.    The use of three separate accounts to make payment to GoodLeap reveals that Defendants Omniya, Sandone and Etzler, through the use of personal and/or corporate accounts associated with other Omniya-affiliated entities, commingled personal funds and/or corporate funds of affiliated entities in furtherance of their scheme.

158.    Defendants Sandone and Etzler used Omniya and its affiliated limited liability companies to perpetrate fraud on Plaintiff and to otherwise evade the law.

159.    At all times relevant, Defendants Sandone and Etzler acted knowingly, intentionally, and willfully.

160.    Plaintiff is entitled to "pierce the corporate veil" and seek to attach the personal assets of the individual defendants.

**WHEREFORE,** Plaintiff requests that this Court:

      a.  Find Defendants Sandone and Etzler jointly and severally liable for the damages Plaintiff has incurred, piercing Omniya-affiliated entities' corporate veils.

      b.  Award punitive damages in an amount sufficient to deter Defendants Sandone and Etzler from future misconduct.

      c.  Award reasonable attorneys' fees and court costs to Plaintiff's counsel.

      d.  Award such other relief as the Court deems necessary and proper.

## COUNT 9: TORTIOUS INTERFERENCE
### (against Sandone and Etzler)

161.    All previous averments are incorporated herein by reference.

162.    Plaintiff and Omniya negotiated and bargained for significant consideration, agreeing to multiple obligations reflected in the Settlement Agreement, which is a valid and enforceable contract.

163.    As the common members and owners of Omniya, Defendants Sandone and Etzler engaged in intentional and improper actions to violate the Settlement Agreement.

164.    Defendant Sandone intentionally caused Omniya to enter into a Settlement Agreement and then, in concert with Defendant Etzler, took concerted action to violate the Settlement Agreement.

165.    Rather than winding down Omniya LLC, and satisfying its obligations to Plaintiff, Defendants Sandone and Etzler formed a new business entity through which they are endeavoring to transfer the assets, business and value of Omniya LLC in order to avoid liability to Plaintiff.

166.    Defendants Sandone and Etzler never intended Omniya LLC to fulfill its obligations under the Settlement Agreement.

167.    Defendants Sandone and Etzler, acting through Omniya LLC, knowingly misrepresented or caused misrepresentations to be made to Plaintiff about Omniya LLC's intention and ability to fulfill its obligations.

**WHEREFORE,** Plaintiff requests that this Court:

    a.  Find that Defendants Sandone and Etzler tortiously interfered with Omniya LLC's contract with Plaintiff by causing it to violate the Settlement Agreement in an effort to continue their business and enrich themselves at Plaintiff's expense.

    b.  Enjoin Defendants Sandone and Etzler from further efforts to strip value from Omniya LLC and transfer its business to Holdings or other Omniya affiliates.

    c.  Award reasonable attorneys' fees and court costs to Plaintiff's counsel.

    d.  Award such other relief as the Court deems necessary and proper.

## COUNT 10: HOLDER RULE
### (against GoodLeap)

168.    All previous averments are incorporated herein by reference.

32

169.     The GoodLeap loan provides:

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

170.     This Holder Rule Notice subjects GoodLeap, as the loan holder, to all claims and defenses which Plaintiff could assert against Omniya.

171.     This language is mandated by the Federal Trade Commission's "Holder Rule," which is codified at 16 C.F.R. § 433.2.

172.     The FTC enacted the Holder Rule "in 1975 in response to [the] rapid growth in consumer installment debt in the United States." *Pulliam v. HNL Automotive, Inc.*, 509 P.3d 998, 1000 (Cal. 2022).

173.     Before the enactment of the Holder Rule, "a third party who purchased a consumer's promissory note did so 'free and clear of any claim or grievance that the consumer may have with respect to the seller.'" *Id.* Because of the FTC's adoption of the Holder Rule, that is no longer the case.

174.     The FTC eventually realized that "the application of the [traditional] holder in due course rule to consumer credit sales was 'anomalous' because consumers are not 'in an equivalent position [to commercial entities] to vindicate their rights against a payee.'" *Id.*  So, the commonsense decision to shift the risk to the lender was made. "Between an innocent consumer, whose dealings with an unreliable seller are, at most, episodic, and a finance institution qualifying as a 'holder in due course,' the financer is in a better position both to protect itself and to assume the risk of a seller's reliability." *Id.*

175.    Plaintiff accordingly incorporates by reference all claims he asserts against the

seller, Omniya, and brings those claims against GoodLeap pursuant to the Holder Rule.


**JURY DEMAND**

Plaintiff demands a trial by jury on all claims so triable pursuant to Rule 38 of the Federal

Rules of Civil Procedure.


Dated: December 5, 2025                    Respectfully submitted,

                                           */s/ Jody Lopez-Jacobs*
                                           CARY L. FLITTER
                                           ANDREW M. MILZ
                                           JODY THOMAS LOPEZ-JACOBS
                                           FLITTER MILZ, PC
                                           450 N. Narberth Avenue, Suite 101
                                           Narberth, PA  19072
                                           (610) 822-0782
                                           amilz@consumerslaw.com
                                           jlopez-jacobs@consumerslaw.com

                                           */s/ Robert W. Ballenger*
                                           ROBERT W. BALLENGER
                                           VIKRAM A. PATEL
                                           Community Legal Services, Inc.
                                           1424 Chestnut Street
                                           Philadelphia, PA 19102
                                           215-981-3700
                                           rballenger@clsphila.org
                                           vpatel@clsphila.org

                                           Attorneys for Plaintiff

**EXHIBIT "A"**

DocuSign Envelope ID: 325EE535-E2B9-4A44-8386-9F98899204E6



# Solar Proposal

## PREPARED FOR

Musa Konateh
6401 Guyer Ave
Philadelphia, PA 19142

## PREPARED BY

Corey Degree
Sales@OmniyaSolar.com
1-800-755-4127
Contractor License Number: PA HIC 171823



## PV System

| System Specifications | |
|---|---|
| **System Size (kW DC)** | 5.600 kW    (QTY 14: 400W Modules) |
| **Estimated Annual Production (kWh)** | 5884 kWh |
| **Current Consumption** | 5884 kWh |
| **System's Utility Offset** | 100% |
| **Monocrystalline Modules:** | **Phono 400W w/25yr. Mfg. warranty** |
| **Array Racking System:** | **Eco X w/25yr. Mfg. warranty** |
| **Micro Inverters:** | **Enphase IQ8+ w/25yr. Mfg. warranty** |
| **Accessories:** | AC/DC Disconnects, Conduit, Wire, Grounding Equipment, Junction Boxes, and all other necessary NEC Compliant Electrical Accessories |



The entire contents of this document including any related prior or subsequent communications is proprietary in nature and deemed to be the exclusive property of Omniya, LLC.
Any unauthorized reproduction and or distribution of these materials in any and all forms is strictly prohibited.
PA HIC 171823

PHONE: 1-800-755-4127
Sales@OmniyaSolar.com



## Scope of Work

1. Complete Solar Photovoltaic Design & Engineering to include Structural and Electrical

2. Local Electric Utility Interconnection Application, Approval & Fees

3. Local Building Construction Permitting & Fees

4. All Project Labor

5. Receive, inspect, record, maintain, secure and install all materials delivered to the project site by Omniya

6. Supply and Install all Bloomberg Tier1 - 600v, 60-cell monocrystalline modules

7. Furnish and Install Inverters

8. Furnish and Install Array Racking System

9. Furnish and Install DC wire and conduit

10. Furnish and install AC wire and conduit

11. Furnish and install AC disconnect

12. All Mechanical/ Electrical system bonding and grounding is included

13. Supply and Install a new Digital Utility Meter

14. Furnish and Install all other Balance of System (BOS) component materials not listed herein

15. Furnish and install all permanent system labeling as required by the National Electric Code

16. Complete System Start-up/ Testing and Commissioning along with customer training

17. Schedule, Attend and Obtain all inspection approvals and provide signed documentation to customer

18. Project Closeout Documents to include As-built drawings, written warranties & guarantees;

✓ **25-Year Module MFG. Warranty**

✓ **25-Year Micro Inverter MFG. Warranty**

✓ **25-Year Racking/ Mounting MFG. Warranty**

✓ **25-Year System Performance & Production Guarantee**

✓ **25-Year Roof Leak Warranty as it directly relates to the means & methods of our roof-top solar installation**

The entire contents of this document including any related prior or subsequent communications is proprietary in nature and deemed to be the exclusive property of Omniya, LLC.
Any unauthorized reproduction and or distribution of these materials in any and all forms is strictly prohibited.
**PA HIC 171823**
PHONE: 1-800-755-4127
Sales@OmniyaSolar.com



## Ownership

| Ownership Cost | |
| --- | --- |
| Loan Amount | $41,070.56 |
| Tax Credit Available | $12,321.17 |
| Loan After Tax Credit | $28,749.39 |
| Annual Rate | 4.99% |
| Number of Payments | 300 |
| Monthly Payment | $174.99 |
| Monthly Payment Tax Credit Not Applied | $249.26 |

## Estimated Savings



*Disclaimer: these projected numbers are an example used in good faith to show the customer the projected growth of their average electricity bill versus the flat sustained rate of a Solar loan after the tax credit is applied.  The accurate and complete loan terms will be listed in the finance agreement.*

The entire contents of this document including any related prior or subsequent communications is proprietary in nature and deemed to be the exclusive property of Omniya, LLC.
Any unauthorized reproduction and or distribution of these materials in any and all forms is strictly prohibited.
PA HIC 171823

PHONE: 1-800-755-4127
Sales@OmniyaSolar.com



## REC Program

In your state, you may be eligible to participate in the SREC program. Under the SREC program your solar system is credited with producing renewable energy credits per the amount of power it produces. More power means more credits. These credits can then be sold in the SREC Marketplace for cash.

Here is a breakdown of what you can expect from the SREC program. (Like in any marketplace, prices will fluctuate in the future. This breakdown is not a guarantee of potential earnings).

| SREC Program Table | |
|---|---|
| Expected SREC Produced (year 1) | 5.5898 |
| SREC Value | $35.00 |
| Expected SREC Value (Year 1) | $195.64 |
| SREC Program Length | 25 years |
| Expected SREC Lifetime Earnings | $4,891.08 |

The entire contents of this document including any related prior or subsequent communications is proprietary in nature and deemed to be the exclusive property of Omniya, LLC.
Any unauthorized reproduction and or distribution of these materials in any and all forms is strictly prohibited.
PA HIC 171823
PHONE: 1-800-755-4127
Sales@OmniyaSolar.com



## Clarifications

- A Federal Income Tax Credit of 30% is available to qualified applicants. Filing of any Federal Tax Form(s) is the sole responsibility of the System Owner. Omniya, LLC will provide assistance to the System Owner, only. Please consult with your independent tax advisor.

- Incentives may be subject to federal income tax. Please consult with your tax advisor.
  (Please Note: Omniya does not give tax advice and highly recommends that the System Owner discuss all tax implications with a Certified Public Accountant or other tax professional.)

- Owner understands that he/she is responsible for all amounts due under this contract and that the ability to obtain incentives and/or tax credits does not impact the amounts due to Omniya under this agreement.

- The work will be substantially completed within 5-days of equipment delivery to the project site. Customer further acknowledges that there has been *no* definitive completion date established. Omniya cannot control the speed with which local, municipal, and state agencies will process applications and paperwork nor do we have control over the electric utility companies which are an integral part of system approval, final interconnect and meter replacements.

- **NOTE: The Final System Size is subject to change upon the final system design to include system sizing, structural capacity, roofing limitations, system shading, local electric utility restrictions and approvals, building departments and other local authorities having jurisdiction, etc. The Total Project Cost will be pro-rated and adjusted accordingly.**

As part of our commitment to ensuring transparency and understanding in our partnership, we would like to clarify the details regarding the commencement of your solar panel payments.

1. Start of Payments: Please note that your first payment for the solar panel installation will be scheduled to start approximately 60 to 90 days after the installation has been completed. This timeframe is subject to variation based on the specific guidelines of your approved finance partner.

2. Relation to Permission to Operate (PTO): It is important to be aware that the initiation of payments may occur prior to receiving Permission to Operate (PTO) from your utility provider. The timeline for PTO can vary depending on the utility company's specific processes and timeframes.

3. Our Commitment: Omniya is dedicated to facilitating a smooth and timely transition for you during this period. We will endeavor to expedite all necessary procedures and coordinate effectively with all parties involved. Our goal is to ensure that your transition to solar energy is as seamless and efficient as possible.

The entire contents of this document including any related prior or subsequent communications is proprietary in nature and deemed to be the exclusive property of Omniya, LLC.
Any unauthorized reproduction and or distribution of these materials in any and all forms is strictly prohibited.
PA HIC 171823

PHONE: 1-800-755-4127
Sales@OmniyaSolar.com



## Terms & Conditions

**ACCESS TO SITE**

In order to perform the Work, Installer shall be permitted to use Owners' driveways & paved areas leading to the Job Site for its equipment without liability to the Installer, except for damage caused by the negligence or other fault of the Installer, its employees, agents, and subcontractors or by their equipment.

**PERMIT FEES**

Installer will complete and submit all permit applications on behalf of the Owner, and Installer will pay for all associated permit fees.

**COMPLETION AND OCCUPANCY**

Owner agrees to sign and record a Notice of Completion within two (2) business days of the completion of the System. Completion of the System occurs after all final inspections and critical testing of the System have been completed, interconnection of the System has occurred, and the System is operational. In the event that Owner receives electricity production from the System for a period in excess of five (5) days before Installer has received payment in full as per the terms of this Agreement, such usage shall constitute full and unqualified acceptance of all the Installer's Work by the Owner and Owner agrees that such usage shall be a waiver of any and all claims against the Installer.

**OWNERSHIP OF SYSTEM**

Until such time as the final payment has been received for the above referenced system, Omniya retains ownership of the System. Upon payment in full, Omniya will issue a Final Bill of Sale to the Owner.

**SITE CONDITIONS**

Installer will remove all debris and excess materials created by the installation of the solar system and will leave the site in clean, broom swept condition.

**ADVERTISING**

Omniya or its affiliates reserve the exclusive right to use as marketing materials any projects or services rendered towards completion of the Scope of Work of this contract while removing any personally identifiable information of the signatory.

**ARBITRATION**

Any dispute or claim arising from this Agreement, or breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association and judgment upon the award rendered by the Arbitrator may be entered in any Court having competent jurisdiction thereof. Notwithstanding the foregoing, and at the sole discretion of Omniya, collection of any unpaid balances may be sought after in any Court having competent jurisdiction thereof or under this arbitration clause. No action by either party arising from or related to this Agreement, or the performance thereof, shall be commenced by either party against the other more than one-year after completion of the project or cessation of work under this Agreement.

The entire contents of this document including any related prior or subsequent communications is proprietary in nature and deemed to be the exclusive property of Omniya, LLC.
Any unauthorized reproduction and or distribution of these materials in any and all forms is strictly prohibited.
PA HIC 171823

PHONE: 1-800-755-4127
Sales@OmniyaSolar.com



## Terms & Conditions

**RIGHT TO CANCEL**

Owner has the legal right to cancel this Agreement prior to midnight of the third (3rd) business day after the date of this Agreement.  Cancellation of this Agreement must be provided to Installer in writing.  Owner can cancel this agreement at any time during design and permitting phase, however owner agrees to reimburse Omniya for all reasonable out of pocket costs incurred by Omniya for the design and permitting of the system.  Omniya will not execute purchase orders for system materials until such time as it receives written authorization from the system owner, proof of project financing and/ or any required deposit.

**EXERCISING YOUR CANCELLATION RIGHTS**

**YOU MAY CANCEL THIS CONTRACT AT ANY TIME BEFORE MIDNIGHT OF THE THIRD BUSINESS DAY AFTER RECEIVING A COPY OF THIS CONTRACT.  IF YOU WISH TO CANCEL THIS CONTRACT, YOU MUST EITHER:**

1.) **SEND A SIGNED AND DATED WRITTEN NOTICE OF CANCELLATION BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED; OR**
2.) **PERSONALLY HAND DELIVER A SIGNED AND DATED WRITTEN NOTICE OF CANCELLATION TO:**

**OMNIYA, LLC**
**200 GROVE RD SUITE C**
**WEST DEPTFORD, NEW JERSEY 08066**
**1-800-755-4127**

**Note: If you cancel this contract within the three day period, you are entitled to a full refund of your money. Refunds must be made within 30-days of the contractor's receipt of the cancellation notice.**

**MISCELLANEOUS**

These Terms and Conditions together with the cover pages providing the Scope of Work, etc. and any attachments hereto or thereto constitute the entire Agreement between the parties.  This Agreement shall be construed in accordance with and governed for all purposes by the laws of the State of New Jersey.  Subject to the provisions contained herein, the parties hereto submit and consent to the exclusive jurisdiction of the courts of the State of New Jersey, County of Gloucester with respect to any legal actions relating to this Agreement. Modifications to this Agreement can be made only in writing, signed and agreed by both the Installer and the System Owner.  System Owner allowing performance of work indicates acceptance without exception to this Agreement, even if this Agreement is not fully executed.  This Agreement is solely for the benefit of the System Owner and Installer, and is not intended for the benefit of any other parties. This Agreement may be executed and delivered by facsimile and/or in one or more counterparts, each of which shall be deemed to be an original but all of which together will constitute one and the same instrument.

**EFFECTIVE DATE**

The effective date ("Effective Date") of this Agreement shall be the date of delivery of the signed Agreement to the Installer and to the System Owner after final execution and dating by the last signatory to this Agreement, including execution of any riders, addenda, and exhibits, if any, along with the initialing and dating of any changes thereto.

the terms of this Agreement, such usage shall constitute full and unqualified acceptance of all the Installer's Work by the Owner and Owner agrees that such usage shall be a waiver of any and all claims against the Installer.

The entire contents of this document including any related prior or subsequent communications is proprietary in nature and deemed to be the exclusive property of Omniya, LLC.
Any unauthorized reproduction and or distribution of these materials in any and all forms is strictly prohibited.
PA HIC 171823
PHONE: 1-800-755-4127
Sales@OmniyaSolar.com



## Customer Acceptance

**TERMS OF PAYMENT**:

All invoices are due upon presentation to the System Owner subject to milestones being met. All invoices not paid within 5-days of due date will be subject to financing charges of 1.5% per month.  Interest shall be computed at an annual percentage rate of 18% from the initial date of invoice for any and all invoices outstanding and not paid within terms.

**CUSTOMER ACCEPTANCE:**

Customer warrants he/she has personally read this agreement in its entirety and fully understands all of the terms and conditions contained herein.  Customer further understands that this agreement between the parties is subject to these terms and conditions notwithstanding.  The system pricing, scope of work, product specifications, customer responsibilities and Terms and Conditions contained and included in this proposal are satisfactory and this proposal is hereby accepted.  Customer authorizes Omniya to perform the work as specified.   Payment will be made as outlined herein.

X _____*MUSA KONATEH*_____          ____2/24/2024_____

Authorized Customer Signature:                          Date:

_____MUSA KONATEH_____

(Print Customer Name)


X _____          _____

Authorized Customer Signature:                          Date:

_____

(Print Customer Name)


X _____*Corey Degree*_____          ____2/24/2024_____

Authorized Signature                                        Date:

Omniya, LLC

_____Corey Degree_____

Name:

_____

Title:

The entire contents of this document including any related prior or subsequent communications is proprietary in nature and deemed to be the exclusive property of Omniya, LLC.
Any unauthorized reproduction and or distribution of these materials in any and all forms is strictly prohibited.
**PA HIC 171823**
PHONE: 1-800-755-4127
Sales@OmniyaSolar.com

**EXHIBIT "B"**

                                                        Welcome Letter

---

Dear Musa Konateh,

**Welcome to GoodLeap!**

Thank you for choosing us, and one of our trusted partners, to upgrade your home sustainably. We're pleased to help manage your payment plan and service your account.

Below, you will find your final Closing Certificate (or Payment Commencement Certificate, if applicable) and final Truth in Lending. The Closing Certificate (or Payment Commencement Certificate, if applicable) outlines the terms of your account including your monthly payment amounts and first payment date. The Truth in Lending Disclosure shows your final APR and other terms.

If you have signed up for Autopay, your first payment will be withdrawn from your bank account on your first payment date as shown on your Closing Certificate (or Payment Commencement Certificate, if applicable). Additionally, we will send you an invoice each month approximately 10 days before your payment is due.

**Customer Portal Information:**
GoodLeap provides an online Portal to manage your account, where you can make additional payments and track pay down progress. Your Portal will be available on or after Monday, May 6th, 2024.

Please sign up and activate your Portal at **www.payGoodLeap.com** anytime on or after Monday, May 6th, 2024. When you get to your portal press **"Enroll Now"** . You will need your Account Number **2403184341** and your zip code **19142** to activate your account.

If you require assistance or have any questions, please contact us.

By phone:      1-800-345-9372

By email:      customerservice@goodleapsupport.com

By mail:       GoodLeap
               PO Box 4387
               Portland, OR 97208

Our mission is to connect a world in which everyone can live sustainably. Together, we are driving sustainability forward, one house at a time.

Thank you,

**The GoodLeap Team**

good for life, earth, and prosperity



Loan Closing Certificate

**Borrower:** Musa Konateh

**Email:** mkonateh553@gmail.com

**Phone:** (610) 803-7881

**Loan Agreement Number:** ████████341

**Product Type:** Standard installment

**Residence Address ("Home"):**
6401 GUYER AVE
PHILADELPHIA, PA 19142

This Loan Closing Certificate confirms that your Loan with GoodLeap has been funded and the following terms have been set:

| Loan Summary | | | |
| --- | --- | --- | --- |
| **Loan Start Date** | **First Payment Date** | **Recurring Payment Date** | **Maturity Date** |
| Apr 26, 2024 | Jul 26, 2024 | 26th | Apr 26, 2049 |

| Loan Terms | | | |
| --- | --- | --- | --- |
| **Loan Term** | **Total Loan Amount** | **Initial Monthly Payment** | **Interest Rate / APR** |
| 25 Years | $41,070.56 | $174.99 | 4.99% |
| **Target Balance** | **Target Balance Date** | **Adjusted Monthly Payment\*** | |
| $29,023.77 | Oct 26, 2025 | $249.27 | |

*Adjusted monthly payment assumes that no prepayment was made and the Target Balance was not met by the Target Balance Date, and you do not change the Autopay payment election.

Your interest rate/APR and monthly payments may vary depending upon whether you cancel or add Autopay payments during the term of the loan.

| Solar/Storage System Description |
| --- |

**Installation Contractor:** Velocity Energy And Home Solutions

**\*Home Improvement Agreement Number:**

*Purchased Goods under this Loan Agreement will be detailed in your Home Improvement Agreement



Truth in Lending Disclosure Statement

**Borrower:** Musa Konateh

**Email:** mkonateh553@gmail.com

**Phone:** (610) 803-7881

**Loan Agreement Number:** ████████4341

**Residence Address:**
6401 GUYER AVE
PHILADELPHIA, PA 19142

**GoodLeap Address:**
8781 Sierra College Blvd
Roseville, CA 95661

**GoodLeap Phone:** 1-877-290-9991

## Truth in Lending Disclosure Statement

| **ANNUAL PERCENTAGE RATE**  The cost of your credit as a yearly rate | **FINANCE CHARGE**  The dollar amount the credit will cost you | **Amount Financed**  The amount of credit provided to you or on your behalf | **Total of Payments**  The amount you will have paid after you have made all payments as scheduled |
|---|---|---|---|
| **4.99%** | **$32,020.71** | **$41,070.56** | **$73,091.27** |

## Monthly Payment Schedule

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 1 | $174.99 | Jul 26, 2024 |
| 15 | $174.99 | Aug 26, 2024 |
| 281 | $249.27 | Nov 26, 2025 |
| 1 | $246.56 | Apr 26, 2049 |

**Autopay – Variable Rate:** The Annual Percentage Rate (APR) and Monthly Payment Schedule above are based, in part, on the Autopay payment option you selected in the loan application. You may change your Autopay payment option at any time. Selecting Autopay payments provides a 0.50% interest rate/APR discount and a lower monthly payment. Cancelling Autopay payments will raise your interest rate/APR by 0.50% and will result in a higher monthly payment.

**Security:** You are giving a security interest in the personal property you are purchasing in this transaction and your rights under any related agreement.

**Prepayment:** If you pay off your loan early, you will not have to pay a penalty.

**Contract Reference:** See your Loan Agreement ("Agreement") for any additional information about nonpayment, default, and any required repayment in full before the scheduled date.

| Itemization of Amount Financed | | |
| --- | --- | --- |
| **Amount Financed**<br>**$41,070.56** | **Amount given to you directly**<br>**$0** | **Amount paid to others on your behalf**<br>**$41,070.56 to Velocity Energy And Home Solutions** |

The "Loan Start Date" is the date we send funds to your contractor. This date must be within 180 days of the initial application date.

This loan is assumable upon the sale of the property to a new owner, if the new homeowner qualifies under GoodLeap's underwriting guidelines and if the assumption is approved by GoodLeap. GoodLeap holds the right to deny the assumption, even if the new homeowner qualifies under GoodLeap's underwriting guidelines.

The Payment Schedule shown above assumes that you make no voluntary prepayments on your Loan. However, we have designed the Loan so that it will re-amortize at the end of the 18th month after your Loan Start Date. As a result, if you make all scheduled payments on time and also make sufficient voluntary prepayment(s) to reduce your total loan amount to the "Target Balance" by the "Target Balance Date" described in your Agreement, your payments from month 19 through the end of your term will be approximately equal to your initial monthly payment stated above.

Your Contractor may have opted to pay GoodLeap a fee in order for GoodLeap to offer you credit on the terms in this Agreement. Your purchase price set by the Contractor may include your Contractor's various costs, including this fee.

The Payment Schedule shown above assumes you make no changes to your Autopay payment option. For example, your 25 year loan of $41,070.56 with Autopay payments will have an interest rate/APR of 4.99% and an initial monthly payment of $174.99 per month. Your 25 year loan of $41,070.56 without Autopay payments will have an interest rate/APR of 5.49% and an initial monthly payment of $184.41 per month.

**EXHIBIT "C"**

Record at the request of and
when recorded return to:
GoodLeap, LLC

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**

**B. E-MAIL CONTACT AT FILER (optional)**
filings@goodleapsupport.com

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

GoodLeap, LLC
PO Box # 981440
El Paso, TX 79998- 1440

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Konateh | Musa | | |
| 1c. MAILING ADDRESS | CITY | STATE / POSTAL CODE / COUNTRY | |
| 6401 Guyer Ave | PHILADELPHIA | PA   19142   USA | |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE / COUNTRY | USA |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| GoodLeap, LLC | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE / POSTAL CODE / COUNTRY | |
| 8781 Sierra College Boulevard | Roseville | CA   95746   USA | |

**4. COLLATERAL:** This financing statement covers the following collateral:

All of the debtors right, title and interest in the Photovoltaic Solar Energy Equipment or Energy Storage/Battery Equipment (If any), including but not limited to rooftop solar panels, solar roofing materials, wall mounted batteries, stand alone batteries, inverters, cables and wires, support brackets, roof mounted or ground mounted racking systems, related equipment, and additions or replacements of the same. In addition, the security interest includes all warranties issued with respect to the referenced collateral

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)  ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:  ☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility  **6b.** Check only if applicable and check only one box:  ☐ Agricultural Lien  ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION** (if applicable):  ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
Acct # 2403184341

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

OR | 9b. INDIVIDUAL'S SURNAME

Konateh

FIRST PERSONAL NAME

Musa

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**10. DEBTOR'S NAME:** Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR | 10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**11.** ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR | 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**

**13.** ☒ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS  (if applicable)

**14.** This FINANCING STATEMENT:
☐ covers timber to be cut  ☐ covers as-extracted collateral  ☒ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

Musa Konateh

**16.** Description of real estate:

**County of:** Philadelphia

**Address:** 6401 Guyer Ave, PHILADELPHIA, PA, 19142

APN: 406304000

NWC OF 64TH ST

**17. MISCELLANEOUS:**

**FILING OFFICE COPY** — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 07/01/23)

**EXHIBIT "D"**



**COMMONWEALTH OF PENNSYLVANIA**
**PENNSYLVANIA PUBLIC UTILITY COMMISSION**
**BUREAU OF CONSUMER SERVICES**
**400 NORTH STREET, HARRISBURG, PA  17120**

2/18/2025

**BCS No:** 4036519

Musa Konateh
6401 Guyer Ave
Philadelphia  PA  19142

Dear Musa Konateh,

The Public Utility Commission has completed its investigation into your informal complaint.  Our decision is attached.  We sent a copy of this decision information to your utility company.  You and the company must both follow this decision.  Both parties may appeal this decision.  If no one appeals, the decision will become final 20 days after the date of this letter.

If you do not agree with this decision you can appeal it by filing a formal complaint.  Complete and return the attached Notification of Intent to Appeal within 20 days of the date on the form.  The Commission will mail you formal complaint forms.  When you complete and return the formal complaint forms, your appeal begins. The Commission will assign your complaint to the Office of Administrative Law Judge.  They will contact you about your formal complaint.

You do not need a lawyer to file an appeal.

You must make all of the payments required by this decision.  If you do not make these payments the utility company has the right to shut off your utility service.

Do not mail your payments to the Public Utility Commission.  Mail your payments directly to your company.

If you have any questions, please call 1-800-692-7380.

Sincerely,

Heather Troutman
Investigator

**INFORMAL COMPLAINT DECISION**
**THE PENNSYLVANIA PUBLIC UTILITY COMMISSION**

Musa Konateh
6401 Guyer Ave
Philadelphia  PA  19142

**Date:** 2/18/2025

**BCS:** 4036519

V.

**Acct. No:** 9721316000

PECO Energy

-------------------------------------------------------------------------------------------------------------------------

**DECISION ON INFORMAL COMPLAINT BY THE PUBLIC UTILITY COMMISSION (PUC):**
The Bureau of Consumer Services investigates and issues final determinations on all informal consumer complaints. (66 Pa. C.S. § 308(d)(1), 66 Pa. C.S. § 308.1(a), and 52 Pa. Code § 56.166)

**STATEMENT OF COMPLAINT:**

We received your informal complaint on 12/20/2024.  In the complaint, you state that you are disputing your bills from July 2024 to current. You state that you have solar panels and are not being provided with your solar credits each month.

**INVESTIGATION BY STAFF OF THE PUBLIC UTILITY COMMISSION FOUND THAT:**

1. The Company reported that on 7/24/2024 they installed a bidirectional meter as needed due to the solar panel installation at the property.

2. Company records show that on 9/5/2024 you were issued a bill for $132.06 with 682 kWh of usage for service dates 7/18/2024 to 8/16/2024. Your actual usage was 910 kWh and your solar credits were 228 kWh.

3. Company records show that on 9/17/2024 you were issued a bill for $100.93 with 508 kWh of usage for service dates 8/16/2024 to 9/17/2024. Your actual usage was 933 kWh and your solar credits were 425 kWh.

4. The Company reported that on 9/25/2024 you called about your account. You were informed that solar credits are issued on your account and any solar credits over the actual usage are banked until May when a credit adjustment is issued.

5. Company records show that on 10/16/2024 you were issued a bill for $108.90 with 622 kWh of usage for service dates 9/17/2024 to 10/16/2024. Your actual usage was 835 kWh and your solar credits were 213 kWh.

6. The Company reported that on 11/6/2024 you contacted them about billing concerns on your solar account. The Company reviewed your account with you.

7. Company records show that on 11/14/2024 you were issued a bill for $142.37 with 834 kWh of usage for service dates 10/16/2024 to 11/14/2024. Your actual usage was 1026 kWh and your solar credits were 192 kWh.

8. Company records show that on 12/14/2024 you were issued a bill for $344.95 with 2116 kWh of usage for service dates 11/14/2024 to 12/14/2024. Your actual usage was 2152 kWh and your solar credits were 36 kWh.

9. The Company reported that on 12/20/2024 you called about your high bill. You were informed that you were not producing enough solar to cover the usage at the property and were receiving a bill for the difference. You disputed the high usage.

10. The Company reported that on 1/15/2025 you called about your account. You stated that you thought you would only have to pay the solar company after the panels were installed. You were informed that the panels are not generating enough energy to cover your usage. The Company set up an appointment to check the meter on 1/17/2025.

11. Company records show that on 1/16/2024 you were issued a bill for $535.08 with 3249 kWh of usage for service dates 12/14/2024 to 1/16/2025. Your actual usage was 3263 kWh and your solar credits were 14 kWh.

12. The Company reported that on 1/17/2025 a technician arrived to check your meter. The technician reported that the meter was working correctly and no foreign load was found. The technician reported that the meter tested at 100.00% accuracy, within regulations.

13. Company records show that your usage has decreased from the prior year. Your usage from 12/13/2023 to 12/14/2024 was 19,289 kWh compared to your usage from 12/14/2022 to 12/13/2023 was 21,750 kWh.

14. Your account balance is $887.81. This does not include any payments made or bills issued after 1/16/2025.


**BASED ON THESE FINDINGS, WE CONCLUDE THAT:**

1. You are being provided with your solar credits each month.

2. Your meter was tested on 1/17/2025 and is working correctly.

3. Your usage has decreased from the prior year.

4. Your account balance is correct.


**THEREFORE, IT IS DECIDED THAT:**

This informal complaint is dismissed.


If you have questions about the terms of this decision or how to appeal this decision, please call us at 1-800-692-7380.


Heather Troutman
Investigator

**This page left blank intentionally.**

Notification of Intent to Appeal BCS Decision
and
**Request for Formal Complaint Forms**

**Send this ONLY if you want to appeal this informal decision.**
If you intend to appeal this decision, you must return this form to the Secretary of the Commission by 3/10/2025**.**
**(You MUST meet this filing deadline).**

This form is NOT your Formal Complaint form. The formal complaint form will be sent to you when the Secretary's Office receives this document. (This form is your _intent_ to appeal).

- Your appeal begins when your signed and dated formal complaint form is received by the Secretary, who will then serve your formal complaint on the utility. (Please know the utility may also appeal the BCS decision).
- The utility must file an Answer to your complaint and they must send you a copy.  The Complaint and Answer is then sent to the Office of Administrative Law Judge to schedule a hearing and assign a Judge to your case.
- The Judge will then send you directions to follow as your complaint proceeds through the process.
- _You do not need a lawyer to file an appeal or a formal complaint._
- _**You must attend the hearing** and offer evidence to prove your complaint has merit.
  Hearings may be held in person or by telephone._

Even if you appeal the informal decision, **you must continue to pay current bills and undisputed charges from your utility.**  Failure to pay your current bill and undisputed charges could result in the termination of your utility service.

☐ **Yes, I want to appeal this decision.**

Customer name and address:             Musa Konateh
(Please correct any mistakes)          6401 Guyer Ave
                                       Philadelphia  PA  19142


_____        _____
(Area Code) Telephone Number            Signature

_____        Permission to Text:  Yes: ____   No: ____
(Cell Phone Number)

BCS:  4036519                           Date of Mailing: 2/18/2025
Company:  PECO Energy                   Filing Due Date: 3/10/2025**(You MUST meet this deadline).**

Send this completed appeal form one of three ways:
1. **Mail by overnight delivery to (deposit date preserves your filing date):**
   Secretary - Pennsylvania Public Utility Commission
   Commonwealth Keystone Building, 2nd Floor
   400 North Street
   Harrisburg, PA  17120
         **(Note: if you send by regular mail, you risk not meeting the filing deadline).**
2. **Email to: RA-PCAppeals@pa.gov**
3. **Fax to: 717-265-8273**

**EXHIBIT "E"**



May 27, 2025

Omniya, LLC
200 Grove Rd., Suite C
West Deptford, New Jersey 08066

     -and-

GoodLeap, LLC
8781 Sierra College Blvd.
Roseville, CA 95678

     -and-

Velocity Energy & Home Solutions, Inc.[1]
304 Colonial Dr.
Wenonah, NJ 08090

BY CERTIFIED MAIL, RETURN RECEIPT REQUESTD

Re:    Musa Konateh
       6401 Guyer Ave., Philadelphia, PA
       Omniya Solar Proposal
       GoodLeap Loan Agreement No. 24-03-184341
       Date of Transaction(s):  February 24, 2024

**<u>NOTICE OF CANCELLATION</u>**

To Whom It May Concern:

     Please be advised that Community Legal Services, Inc. (CLS) represents Musa Konateh. who, together with his wife Haja Konateh, are the homeowners of 6401 Guyer Avenue, Philadelphia, Pennsylvania.  On Mr. Konateh's behalf, I am writing pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-7 (CPL), to hereby **<u>rescind</u>** and **<u>cancel</u>** the above transaction(s), relating to the purchase and/or installation of solar panels and equipment and the associated financing agreement.  Mr. Konateh retains the right to this date to cancel the transaction(s) because the contracts do not contain specific disclosures required by

---

[1] The Home Improvement Contractor License Number (PA 171823) appearing on the Omniya Solar Proposal is registered to Velocity Energy & Home Solutions, Inc. (Velocity).  It is unknown whether Velocity has or claims any contractual or other relationship with Mr. Konateh associated with the transactions described herein; nonetheless, any such claims or relationships are hereby rescinded and canceled.

**Center City Office**: 1424 Chestnut St.  |  Philadelphia, PA 19102-2505  |  Telephone: 215-981-3700    **clsphila.org**
**North Philadelphia Law Center**: 1410 West Erie Ave.  |  Philadelphia, PA 19140-4136  |  Telephone: 215-227-2400

Pennsylvania law for home improvement contracts and do not comply with the CPL's requirements concerning notices of cancellation.  **Mr. Konateh was never given proper notice of his cancellation rights**.

Mr. Konateh hereby makes available to you at his residence in substantially as good condition as when received, any goods delivered to him under these transactions.  Please notify me or Mr. Konateh whether you intend to repossess or to abandon any shipped or delivered goods.  If you elect to repossess but do not do so within twenty (20) days of the date of this notice of cancellation, Mr. Konateh will retain or dispose of the goods without any further obligation.

Pursuant to the CPL, 73 P.S. § 201-7(c), you must honor this notice and, within ten (10) days after the receipt of this notice, (i) refund all payments made under the contract or sale; (ii) return any goods or property traded in, in substantially as good condition as when received by you; and (iii) cancel and return any negotiable instrument executed by Mr. Konateh in connection with the contract or sale and take any action necessary or appropriate to terminate promptly any security interest (i.e., the UCC Financing Statement recorded on May 8, 2024) associated with the transaction(s).

In addition, I request that you forward to me copies of all contracts, certificates of completion, verifications, or other acknowledgements, as well as correspondence (including email) associated with the transaction(s).  Please let me know if you have any questions or wish to discuss this matter.

Sincerely,

Robert W. Ballenger
Senior Supervising Attorney
Community Legal Services, Inc.
1424 Chestnut St.
Philadelphia, PA 19102
(215) 981-3788
rballenger@clsphila.org



May 27, 2025

Omniya, LLC
200 Grove Rd., Suite C
West Deptford, New Jersey 08066

    -and-

GoodLeap, LLC
8781 Sierra College Blvd.
Roseville, CA 95678

    -and-

Velocity Energy & Home Solutions, Inc.[1]
304 Colonial Dr.
Wenonah, NJ 08090

BY CERTIFIED MAIL, RETURN RECEIPT REQUESTD

Re:    Musa Konateh
       6401 Guyer Ave., Philadelphia, PA
       Omniya Solar Proposal
       GoodLeap Loan Agreement No. 24-03-184341
       Date of Transaction(s):  February 24, 2024

**<u>NOTICE OF CANCELLATION</u>**

To Whom It May Concern:

    Please be advised that Community Legal Services, Inc. (CLS) represents Musa Konateh. who, together with his wife Haja Konateh, are the homeowners of 6401 Guyer Avenue, Philadelphia, Pennsylvania.  On Mr. Konateh's behalf, I am writing pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-7 (CPL), to hereby **<u>rescind</u>** and **<u>cancel</u>** the above transaction(s), relating to the purchase and/or installation of solar panels and equipment and the associated financing agreement.  Mr. Konateh retains the right to this date to cancel the transaction(s) because the contracts do not contain specific disclosures required by

---

[1] The Home Improvement Contractor License Number (PA 171823) appearing on the Omniya Solar Proposal is registered to Velocity Energy & Home Solutions, Inc. (Velocity).  It is unknown whether Velocity has or claims any contractual or other relationship with Mr. Konateh associated with the transactions described herein; nonetheless, any such claims or relationships are hereby rescinded and canceled.

**Center City Office**: 1424 Chestnut St.  |  Philadelphia, PA 19102-2505  |  Telephone: 215-981-3700  **clsphila.org**
**North Philadelphia Law Center**: 1410 West Erie Ave.  |  Philadelphia, PA 19140-4136  |  Telephone: 215-227-2400



Pennsylvania law for home improvement contracts and do not comply with the CPL's requirements concerning notices of cancellation. **Mr. Konateh was never given proper notice of his cancellation rights**.

Mr. Konateh hereby makes available to you at his residence in substantially as good condition as when received, any goods delivered to him under these transactions. Please notify me or Mr. Konateh whether you intend to repossess or to abandon any shipped or delivered goods. If you elect to repossess but do not do so within twenty (20) days of the date of this notice of cancellation, Mr. Konateh will retain or dispose of the goods without any further obligation.

Pursuant to the CPL, 73 P.S. § 201-7(c), you must honor this notice and, within ten (10) days after the receipt of this notice, (i) refund all payments made under the contract or sale; (ii) return any goods or property traded in, in substantially as good condition as when received by you; and (iii) cancel and return any negotiable instrument executed by Mr. Konateh in connection with the contract or sale and take any action necessary or appropriate to terminate promptly any security interest (i.e., the UCC Financing Statement recorded on May 8, 2024) associated with the transaction(s).

In addition, I request that you forward to me copies of all contracts, certificates of completion, verifications, or other acknowledgements, as well as correspondence (including email) associated with the transaction(s). Please let me know if you have any questions or wish to discuss this matter.

Sincerely,

Robert W. Ballenger
Senior Supervising Attorney
Community Legal Services, Inc.
1424 Chestnut St.
Philadelphia, PA 19102
(215) 981-3788
rballenger@clsphila.org



May 27, 2025

Omniya, LLC
200 Grove Rd., Suite C
West Deptford, New Jersey 08066

    -and-

GoodLeap, LLC
8781 Sierra College Blvd.
Roseville, CA 95678

    -and-

Velocity Energy & Home Solutions, Inc.[1]
304 Colonial Dr.
Wenonah, NJ 08090

BY CERTIFIED MAIL, RETURN RECEIPT REQUESTD

Re:    Musa Konateh
       6401 Guyer Ave., Philadelphia, PA
       Omniya Solar Proposal
       GoodLeap Loan Agreement No. 24-03-184341
       Date of Transaction(s):  February 24, 2024

**<u>NOTICE OF CANCELLATION</u>**

To Whom It May Concern:

    Please be advised that Community Legal Services, Inc. (CLS) represents Musa Konateh. who, together with his wife Haja Konateh, are the homeowners of 6401 Guyer Avenue, Philadelphia, Pennsylvania.  On Mr. Konateh's behalf, I am writing pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-7 (CPL), to hereby **<u>rescind</u>** and **<u>cancel</u>** the above transaction(s), relating to the purchase and/or installation of solar panels and equipment and the associated financing agreement.  Mr. Konateh retains the right to this date to cancel the transaction(s) because the contracts do not contain specific disclosures required by

---

[1] The Home Improvement Contractor License Number (PA 171823) appearing on the Omniya Solar Proposal is registered to Velocity Energy & Home Solutions, Inc. (Velocity).  It is unknown whether Velocity has or claims any contractual or other relationship with Mr. Konateh associated with the transactions described herein; nonetheless, any such claims or relationships are hereby rescinded and canceled.

**Center City Office**: 1424 Chestnut St.  |  Philadelphia, PA 19102-2505  |  Telephone: 215-981-3700  **clsphila.org**
**North Philadelphia Law Center**: 1410 West Erie Ave.  |  Philadelphia, PA 19140-4136  |  Telephone: 215-227-2400



Pennsylvania law for home improvement contracts and do not comply with the CPL's requirements concerning notices of cancellation. **Mr. Konateh was never given proper notice of his cancellation rights**.

Mr. Konateh hereby makes available to you at his residence in substantially as good condition as when received, any goods delivered to him under these transactions. Please notify me or Mr. Konateh whether you intend to repossess or to abandon any shipped or delivered goods. If you elect to repossess but do not do so within twenty (20) days of the date of this notice of cancellation, Mr. Konateh will retain or dispose of the goods without any further obligation.

Pursuant to the CPL, 73 P.S. § 201-7(c), you must honor this notice and, within ten (10) days after the receipt of this notice, (i) refund all payments made under the contract or sale; (ii) return any goods or property traded in, in substantially as good condition as when received by you; and (iii) cancel and return any negotiable instrument executed by Mr. Konateh in connection with the contract or sale and take any action necessary or appropriate to terminate promptly any security interest (i.e., the UCC Financing Statement recorded on May 8, 2024) associated with the transaction(s).

In addition, I request that you forward to me copies of all contracts, certificates of completion, verifications, or other acknowledgements, as well as correspondence (including email) associated with the transaction(s). Please let me know if you have any questions or wish to discuss this matter.

Sincerely,

Robert W. Ballenger
Senior Supervising Attorney
Community Legal Services, Inc.
1424 Chestnut St.
Philadelphia, PA 19102
(215) 981-3788
rballenger@clsphila.org

**U.S. Postal Service™**
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*    R. Ballenger

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee

$

Extra Services & Fees (check box, add fee as appropriate)
- [✓] Return Receipt (hardcopy)       $
- [ ] Return Receipt (electronic)     $
- [ ] Certified Mail Restricted Delivery  $
- [ ] Adult Signature Required        $
- [ ] Adult Signature Restricted Delivery  $

Postmark
Here

MAY 27 2025

LAND TITLE PHILA PA 19110
USPS

Postage

$

Total Postage and Fees

$

Sent To  Good Leap, LLC
Street and Apt. No., or PO Box No.  8781 Sierra College Blvd.
City, State, ZIP+4®  Roseville, CA  95678

PS Form 3800, January 2023 PSN 7530-02-000-9047   See Reverse for Instructions

7022 3018 ... 0220 5270 0710 9589

---

**U.S. Postal Service™**
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*    R. Ballenger

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee

$

Extra Services & Fees (check box, add fee as appropriate)
- [✓] Return Receipt (hardcopy)       $
- [ ] Return Receipt (electronic)     $
- [ ] Certified Mail Restricted Delivery  $
- [ ] Adult Signature Required        $
- [ ] Adult Signature Restricted Delivery  $

Postmark
Here

MAY 27 2025

LAND TITLE PHILA PA 19110
USPS

Postage

$

Total Postage and Fees

$

Sent To  Omaiya, LLC
Street and Apt. No., or PO Box No.  200 Grove Rd., Suite C
City, State, ZIP+4®  West Deptford, NJ  08066

PS Form 3800, January 2023 PSN 7530-02-000-9047   See Reverse for Instructions

7022 4653 ... 0107 5270 0710 9589

---

**U.S. Postal Service™**
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*    R. Ballenger

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee

$

Extra Services & Fees (check box, add fee as appropriate)
- [✓] Return Receipt (hardcopy)       $
- [ ] Return Receipt (electronic)     $
- [ ] Certified Mail Restricted Delivery  $
- [ ] Adult Signature Required        $
- [ ] Adult Signature Restricted Delivery  $

Postmark
Here

MAY 27 2025

LAND TITLE PHILA PA 19110

Postage

$

Total Postage and Fees

$

Sent To  Velocity Energy & Home Solutions, Inc.
Street and Apt. No., or PO Box No.  304 Colonial Dr.
City, State, ZIP+4®  Wenonah, NJ  08090

PS Form 3800, January 2023 PSN 7530-02-000-9047   See Reverse for Instructions

7022 4653 ... 0107 5270 0710 9589

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Omniya, LLC
200 Grove Rd., Suite C
West Deptford, NJ 08066

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 8580 3244 2139 72

2. Article Number (Transfer from service label)

589 0710 5270 0107 4653 72

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _April Vettese_   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
April Vettese                   5/29/25

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:            ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ...ured Mail
☐ ...ured Mail Restricted Delivery
      (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053          Domestic Return Receipt

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Good Leap, LLC
8781 Sierra College Blvd.
Roseville, CA 95678

9590 9402 8580 3244 2275 59

2. Article Number *(Transfer from service label)*

9589 0710 5270 0228 3018 32

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X *Taylor Beeler*    ☐ Agent
                     ☐ Addressee

B. Received by *(Printed Name)*    C. Date of Delivery

*Taylor Beeler*

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery ($500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053    Domestic Return Receipt



COMMUNITY L

1424 CHESTNUT STREET,

CERTIFIED MAIL®

9589 0710 5270 0107 4653 65

PHILADELPHIA PA 190

24 MAY 2025 PM 5 L

Velocity Enc & C Solutions, Inc.
304 Colonial
Wenonah, NJ 08090

NIXIE          731    CE 1          0007/33/25

RETURN TO SENDER
UNCLAIMED
UNABLE TO FORWARD

MANUAL PROC REQ          *2497-09124-27-39

08090-1865E>9999

RECEIVED
SEP 2 5 2025

FP® US POSTAGE
$ 009.64
First-Class I'M
ZIP 19102



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Velocity Energy & Home Solutions, Inc
304 Colonial Dr.
Wenonah, NJ 08090

9590 9402 8580 3244 2139 65

2. Article Number (Transfer from service label)

9589 0710 5270 0107 4653 65

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent
  ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

UNCLAIMED

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT

**EXHIBIT "F"**

Our mission is to connect a world in which
**everyone can live sustainably.**

Inside this package is your payment agreement
for your upcoming home improvements.

Thank you for choosing us, and one of our trusted
partners, to help you upgrade your home.

for life, earth, and prosperity

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net



Key Loan Terms

In this package, you will be signing your loan agreement with the following terms:

| Loan Amount | Loan Term | Interest Rate/APR |
|---|---|---|
| **$41,070.56** | **25 years** | **4.99%** |

Borrower's Initials

| | |
|---|---|
| **Initial Payment** <br> **$174.99 (e) / month** | Your initial GoodLeap monthly payment for the first 18 months. |
| **Adjusted Monthly Payment** <br> **$249.27 (e) / month** | Your adjusted GoodLeap monthly payment starting in month 19 until the end of your loan term if no voluntary payments are made in the first 18 months. <br><br> Your loan is designed to re-amortize at the end of the 18th month. If you choose to make voluntary prepayments on your loan equal to 30% of your loan amount before the end of the 18th month, your loan payment will stay approximately the same as your initial monthly payment throughout the life of your loan. If you do not make a voluntary prepayment, your monthly loan payment will go up to the adjusted amount. |

"(e)" means an estimate

Your loan start date is the date we fund the loan to your Contractor. Interest on your loan begins to accrue on the loan start date.

Your first payment date will be due approximately 90 days after your loan start date. Your first payment date may be before your system has been granted Permission to Operate from your utility company.

Borrower's Signature

Date: Feb 24, 2024

If you have any questions about your loan or your loan terms after reviewing this package, please call GoodLeap at 1 (844) 910-0111.

DocuSign Envelope ID: ED9BC799-9B9E-43AF-A9DB-3B70EB5F3E5A
THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net



Truth in Lending Disclosure Statement

**Borrower:** Musa Konateh

**Email:** mkonateh553@gmail.com

**Phone:** (610) 803-7881

**Loan Agreement Number:** ████4341

**Residence Address:**

6401 GUYER AVE
PHILADELPHIA, PA 19142

**Date of the Agreement:** Feb 24, 2024

**GoodLeap Address:**

8781 Sierra College Blvd
Roseville, CA 95661

**GoodLeap Phone:** 1-877-290-9991

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid after you have made all payments as scheduled |
| **4.99%** | **$32,020.71 (e)** | **$41,070.56** | **$73,091.27 (e)** |

| Monthly Payment Schedule | | |
|---|---|---|
| **Number of Payments** | **Amount of Payments** | **When Payments Are Due** |
| **1** | **$174.99 (e)** | **Monthly, beginning 3 months after the Loan Start Date (e)** |
| **15** | **$174.99 (e)** | **Monthly, beginning 4 months after the Loan Start Date (e)** |
| **281** | **$249.27 (e)** | **Monthly, beginning 19 months after the Loan Start Date (e)** |
| **1** | **$246.56 (e)** | **300 months after the Loan Start Date (e)** |

"(e)" means an estimate

**Autopay - Variable Rate:** The Annual Percentage Rate (APR) and Monthly Payment Schedule above are based, in part, on the Autopay payment option you selected in the loan application. You may change your Autopay payment option at any time. Selecting Autopay payments provides a 0.50% interest rate/APR discount and a lower monthly payment. Cancelling Autopay payments will raise your interest rate/APR by 0.50% and will result in a higher monthly payment.

**Security:** You are giving a security interest in the personal property you are purchasing in this transaction and your rights under any related agreement.

**Prepayment:** If you pay off your loan early, you will not have to pay a penalty.

**Contract Reference:** See your Loan Agreement ("Agreement") for any additional information about nonpayment, default, and any required repayment in full before the scheduled date.

THIS IS A COPY
The authoritative copy of this record is held at NA3.docusign.net

| Itemization of Amount Financed | | |
|---|---|---|
| **Amount Financed**<br><br>**$41,070.56** | **Amount given to you directly**<br><br>**$0.00** | **Amount paid to others on your behalf**<br><br>**$41,070.56 to Velocity Energy And Home Solutions** |

The "Loan Start Date" is the date we send funds to your contractor. This date must be within 180 days of the initial application date.

This loan is assumable upon the sale of the property to a new owner, if the new homeowner qualifies under GoodLeap's underwriting guidelines and if the assumption is approved by GoodLeap. GoodLeap holds the right to deny the assumption, even if the new homeowner qualifies under GoodLeap's underwriting guidelines.

The Payment Schedule shown above assumes that you make no voluntary prepayments on your Loan. However, we have designed the Loan so that it will re-amortize at the end of the 18th month after your Loan Start Date. As a result, if you make all scheduled payments on time and also make sufficient voluntary prepayment(s) to reduce your total loan amount to the "Target Balance" by the "Target Balance Date" described in your Agreement, your payments from month 19 through the end of your term will be approximately equal to your initial monthly payment stated above.

Your Contractor may have opted to pay GoodLeap a fee in order for GoodLeap to offer you credit on the terms in this Agreement. Your purchase price set by the Contractor may include your Contractor's various costs, including this fee.

The Payment Schedule shown above assumes you make no changes to your Autopay payment option. For example, your 25 year loan of $41,070.56 with Autopay payments will have an interest rate/APR of 4.99% and an initial monthly payment of $174.99 (e) per month. Your 25 year loan of $41,070.56 without Autopay payments will have an interest rate/APR of 5.49% and an initial monthly payment of $184.41 (e) per month.

**By signing below, you acknowledge that you have read and received a complete copy of this disclosure to keep for future reference before you signed your Agreement.**

Borrower's Signature: _Musa konateh_    Date: _Feb 24, 2024_

GoodLeap, LLC    _Matt Dawson_

**Matt Dawson, Co-Founder**

DocuSign Envelope ID: ED9BC799-9B9E-43AB-A9DB-3B70EB5F3F5A

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net



Loan Agreement

**Borrower:** Musa Konateh

**Email:** mkonateh553@gmail.com

**Phone:** (610) 803-7881

**Loan Agreement Number:** ████4341

**Residence Address:**

6401 GUYER AVE
PHILADELPHIA, PA 19142

**Date of the Agreement:**  Feb 24, 2024

**GoodLeap Address:**

8781 Sierra College Blvd
Roseville, CA 95661

**GoodLeap Phone:** 1-877-290-9991

This document provides a summary of the terms and conditions of your loan

| Summary of Loan Terms and Payments | | | |
|---|---|---|---|
| **Loan Term** | **Total Loan Amount** | **Initial Monthly Payment** | **Interest Rate/APR** |
| 25 years | $41,070.56 | $174.99 (e) | 4.99% |
| **Target Balance** | **Target Balance Date** | **Adjusted Monthly Payment\*** | |
| $29,023.77 (e) | Oct 24, 2025 (e) | $249.27 (e) | |

(e) means estimate

\* Adjusted monthly payment assumes that no prepayment was made and the Target Balance was not met by the Target Balance Date, and you do not change the Autopay payment election.

| System Information |
|---|

**Installation Contractor:** Velocity Energy And Home Solutions

Purchased Goods under this Loan Agreement will be detailed in your Home Improvement Agreement with your Contractor. By initialing below, you confirm receipt of such Home Improvement Agreement.

**Borrower's Initials** 

| Loan Information |
|---|

<u>**Loan Start Date and First Payment Date**</u>

The "Loan Start Date" and "First Payment Date" will be finalized in your Loan Closing Certificate (Exhibit A), an example of which is fully incorporated herein. This certificate will be sent to you following disbursement of the loan proceeds.

**The "Loan Start Date" will be the date that we disburse loan proceeds to your Contractor. You hereby authorize us to disburse proceeds to the Contractor when the Contractor informs us all our conditions for payment have been completed.**

THIS IS A COPY
The authoritative copy of this record is held at NA3.docusign.net

The "First Payment Date" will be set by us as follows: If the Loan Start Date is on the 1st through 28th, it will be on the corresponding date 3 months later (i.e., if June 15th, then September 15th); if the Loan Start Date is on the 29th through 31st, it will be on the first day of the first month following 90 days after the Loan Start Date (i.e., if June 30th, then October 1st). You are obligated to make all loan payments starting on your First Payment Date, regardless of the utility company granting permission to operate.

**Borrower's Initials**

Interest will accrue on the loan amounts actually disbursed, with the first accrual starting on the first calendar day following the Loan Start Date. Thus, the longer your First Payment Date is from the Loan Start Date, the more interest you will pay. If you wish to reduce the amount of interest that accrues, you can begin making payments earlier, at any time you choose after the Loan Start Date. However, interest will continue to accrue until all amounts owed under this Agreement are paid in full.

Your loan application was approved for a period of 180 days from the initial credit report date. If the Loan Start Date does not occur within 180 days from the initial credit report date, we will request a new credit report from the credit bureaus, to make sure that you continue to qualify for the same loan terms. This may impact your credit score.

### Tax Credit

You may be eligible for a federal solar investment tax credit. You acknowledge that eligibility for this tax credit is not guaranteed. In order to realize the benefits of the solar investment tax credit, you must have federal income liability that is at least equal to the value of the credit. We are not financially responsible for your receipt of any tax credits related to the Solar Equipment. We do not provide tax advice and nothing in this Loan Agreement is intended to be used as tax advice. To determine your eligibility for any federal solar investment tax credit, you should make an independent assessment or consult with your tax advisor.

### Target Balance Payments and Initial Monthly Payments

You are not required to make prepayments. However, you acknowledge that in order to avoid an increase in your Initial Monthly Payment, you must make one or more voluntary prepayments equal to 30% of your Total Loan Amount by your Target Balance Date. If you pay more than 30% of your Total Loan Amount, your monthly payments will be adjusted to a lower amount than the Initial Monthly Payment. If you do not make any prepayments, or if your prepayments are less than 30% of your Total Loan Amount, your monthly payments will be adjusted to a higher amount than the Initial Monthly Payment. You also understand that your Initial Monthly Payments will not be fully amortizing, but your new Monthly Payment after the Target Balance Date will be fully amortizing.

**Borrower's Initials**

### Security Agreement

You authorize us to file on your behalf any documentation, including but not limited to a copy of this Agreement, a UCC financing statement and/or a county fixture filing required to perfect our security interest in the Collateral to the extent required by applicable law, as outlined in Section 6 of this agreement.

## Loan Agreement

This agreement is legally binding starting on the effective date noted above. In this agreement, the words "you" and "your" refer to borrower, co-borrower and anyone you have been allowed to assign it to. The words "GoodLeap", "lender", "our" and "us" refer to GoodLeap, LLC or its assignees. This agreement replaces any prior agreements between you and us concerning the loan.

1. **INTRODUCTION.** The parties (each, a "Party" and collectively, "Parties") to this Agreement are you and GoodLeap, LLC ("GoodLeap"). Your solar installation contractor ("Contractor") has provided us with a copy of a signed home improvement agreement between you and the Contractor (the "Home Improvement Agreement") under which the Contractor will install solar panels, inverters, racking systems, wiring, electrical and mechanical connections, metering, monitoring and/or other distributed generation interconnect equipment ("Solar Equipment") and may, in addition or instead, install new roofs and related roofing materials, battery storage equipment, electrical vehicle power charging equipment, and thermostat

THIS IS A COPY
The authoritative copy of this record is held at NA3.docusign.net

equipment, and provide landscaping services to accommodate the solar system (together with the Solar Equipment, "Purchased Goods") at your home ("Residence") located at the Residence Address listed above.

2. **PROMISE TO PAY.** For value received, you promise to pay to GoodLeap and/or its assignees, the principal sum of the Total Loan Amount, with interest as set forth in Section 3 ("Interest and Payments") and any fees assessed in Section 4 ("Fees") below.

3. **INTEREST AND PAYMENTS.**

   a. <u>**Payment Timing.**</u> Your first Monthly Payment is due and payable on the First Payment Date (estimated on the Truth in Lending Disclosure and finalized on the Loan Closing Certificate).

   b. <u>**Payment Application.**</u> If you make a payment that satisfies all current and past due installments, any additional payment will be allocated as set forth in the following sentence, but that additional payment will not change the due date for any payment that comes due in the future. To the extent permitted by applicable law, all payments or prepayments will be applied first to accrued interest, then to unpaid principal in the inverse order of maturity (last to first), and then to fees or costs payable to us under this Agreement.

   c. <u>**Accrual.**</u> Interest will accrue on the loan amounts actually disbursed, with the first accrual starting on the first calendar day following the Loan Start Date. Interest will continue to accrue until all amounts owed under this Agreement are paid in full. Unpaid interest will not be added to the principal balance. To the extent permitted by applicable law, interest on your loan will be calculated on a 30/360 basis. For any partial month, interest accrues based on the actual number of days your loan is outstanding for such partial month. If you make your loan payments late, more interest will accrue, and the total finance charge you pay over the life of your loan will be higher. If you make your loan payments early, less interest will accrue, and the total finance charge you pay over the life of your loan will be less. Interest accrues between the Loan Start Date and your First Payment Date, and the longer the period of time between the Loan Start Date and your First Payment Date, the more interest will accrue. If you wish to reduce the amount of interest that accrues before your First Payment Date, you can begin making loan payments any time after the Loan Start Date. The amount of your final loan payment will change based on when you pay your monthly loan payments and whether you make any voluntary prepayments.

   d. <u>**Interest rate and Monthly Payment Amounts.**</u> Your interest rate may vary depending upon only whether you cancel or add Autopay payments during the term of your loan, with a 0.50% interest rate discount for Autopay, or removal of that discount without Autopay. The monthly payments you must make, assuming you make all payments in full and on time and do not change your Autopay payment election, are set forth in your Loan Closing Certificate based upon your prior Autopay election. If there is a change to your Autopay status the new interest rate and accrual will be reflected in your monthly payment for the next applicable billing cycle.

   e. <u>**Target Balance / Target Balance Date / Initial Monthly Payment / New Monthly Payment:**</u> After the Target Balance Date, your loan will re-amortize to reflect your outstanding principal balance on the Target Balance Date and your new Monthly Payments will be adjusted to an amount required to cause the full repayment of the Loan by the Maturity Date. You understand that your Initial Monthly Payments will not be fully amortizing, but your new Adjusted Monthly Payments after the Target Balance Date will be fully amortizing and will be calculated as follows:

      i. If you do not make any voluntary prepayments before the Target Balance Date, then your new Monthly Payment will be the Adjusted Monthly Payment.

      ii. If you make voluntary prepayments but such prepayments do not reduce your Total Loan Amount equal to or below the Target Balance by the Target Balance Date, then your new Monthly Payment will be an amount greater than your Initial Monthly Payment but less than the Adjusted Monthly Payment.

      iii. If you make voluntary prepayments and such prepayments reduce your Total Loan Amount equal to the Target Balance by the Target Balance Date, then your new Adjusted Monthly Payment will be approximately equal to your Initial Monthly Payment.

      iv. If you make voluntary prepayments to reduce your unpaid Total Loan Amount to less than the Target Balance by the Target Balance Date, then your new Adjusted Monthly Payment will be less than the Initial Monthly Payment reflected in the Loan Summary above for the remainder of the Term.

   f. <u>**Maturity Date.**</u> Unless your loan is due earlier and payable as provided in this Agreement, your loan will mature on the Maturity Date. On the Maturity Date, you agree to pay in full any unpaid amounts payable under this Agreement.

THIS IS A COPY

The Authoritative Copy of this record is held at NA3.docusign.net

g. **Payment Method.** You may pay by Autopay or check. If you chose to pay by Autopay in your application, you agree to complete and submit the Automatic Payment Authorization Form (the "Autopay Authorization"). If you chose to pay by check, include your Loan Agreement Number on your check and mail it to GoodLeap, PO BOX 4387, Portland, OR 97208. You may change your payment method by following the instructions in the Autopay Authorization.

h. **Prepayment.** You may prepay your loan at any time without penalty.

4. **FEES.** We will also charge you the following fees to the extent permitted by applicable law.

   a. **Insufficient Funds Fee.** Unless prohibited by law, you will be charged a non-refundable fee of $15 for each failed electronic or check payment attempt. Your bank may assess its own fee in addition to the fee we assess.

   b. **Fee for the Removal and Refiling of Our County Fixture Filing.** See Section 6 below for further information.

   c. **Transfer Fee.** See Section 6 below for further information.

   d. **Alternative Payment Convenience Fee.** Where permitted by law, if you request that we accept a payment via an alternative source such as a debit card, you may be charged a convenience fee, in an amount that we will disclose prior to your election to pay by such alternative method.

5. **ADDITIONAL OBLIGATIONS AND REPRESENTATIONS.**

   a. **Collateral.** To the extent permissible by law, you irrevocably grant us a limited power of attorney with full power of substitution and re-substitution, to sign any documents and perform any acts, in your name and on your behalf, for the exclusive purpose of exercising our rights with respect to the Collateral under this Agreement. You also agree not to pledge, mortgage, encumber or otherwise permit the Collateral at any time to be subject to any lien or encumbrance that is superior to our security interest. See Section 6 below for further information on what constitutes eligible Collateral under this Agreement.

   b. **Ownership Confirmation.** You represent and covenant that: (1) the Residence is your primary residential home dwelling or a second/vacation home and is not a rental property, or any business or commercial establishment or used as such; (2) you, or a trust controlled by you, are the fee simple owner of the Residence and the Collateral; (3) you are not, and will not, be in breach of your Home Improvement Agreement.

   c. **Collateral Access.** You agree to provide us or our designees after receiving reasonable notice, with access to the Residence for the purposes of (1) inspecting the Purchased Goods until this Agreement terminates or, (2) in the case of a foreclosure on the Collateral, removing the Collateral from the Residence.

   d. **Personal Property.** You and we both expressly intend that no portion of the Collateralized Goods will constitute a "fixture" attached to any real property, and that the Collateralized Goods will be removable personal property. You also agree not to take any action that might cause the Collateralized Goods to be treated as real property or as fixtures to real property. You agree that we may make a fixture filing, if we choose, provided that you and we agree that we may enforce rights in the Collateralized Goods under the Uniform Commercial Code and not under state real estate or mortgage law.

   e. **Installation and Maintenance.** You will take all steps necessary to enable the installation and proper functioning of the Purchased Goods to be completed in accordance with the Home Improvement Agreement and to be maintained in accordance with any Operations and Maintenance Agreement. You agree to keep the Purchased Goods in good working order and in compliance with manufacturing specifications, the operating and maintenance manuals, warranty requirements provided by your Installation Contractor and, if applicable, your Operations and Maintenance Contractor, and all applicable law, and not to remove or modify the Purchased Goods without our prior written consent. You agree to maintain at all times an internet connection sufficient to ensure that monitoring data for the Solar Equipment can be fully transmitted, and consent to GoodLeap receiving such monitoring data, directly or through Contractor. You will be responsible for the structural integrity of the location where the Purchased Goods are installed, including structural or electrical modifications necessary to prepare your Residence for the Purchased Goods.

   f. **Property Conditions.** You agree that GoodLeap is not responsible for any known or unknown Residence conditions. GoodLeap is not responsible and bears no liability for the malfunctioning of existing electrical equipment at the Residence, including but not limited to the main electrical service panel, any major electrical devices, or any other fuses or similar devices.

   g. **Taxes.** You agree to pay, when due, your taxes, assessments, or other similar fees. If you do not pay these taxes or other fees when due, we may pay them on your behalf and add the amount we pay to the principal of our loan under this

DocuSign Envelope ID: ED9BC789-8B9E-43A2-A9D8-2B70EB5F3E5A

THIS IS A COPY
The authoritative copy of this record is held at NA3.docusign.net

Agreement. In the event that we choose pay these taxes and/or other fees on your behalf, you agree to assist us in these efforts. Tax obligations that you may be required to pay may include: (1) the assessed value and the property tax assessments associated with the Purchased Goods calculated in the year this Agreement is signed; (2) transaction privilege taxes; and (3) any obligation to transfer tax credits or tax incentives of the Purchased Goods to any other person.

h. **Required Insurance.** To the extent permissible by law, you agree to maintain and pay any deductibles under a homeowners' insurance policy or equivalent insurance policy reasonably acceptable to us covering the Purchased Goods in an amount equal to the full replacement and installation cost of the Purchased Goods or the outstanding balance of the loan. If there is a payout under the property coverage for damage to the Purchased Goods, you agree to deliver those insurance proceeds to us, and we will apply those proceeds to the loan in the order of priority set forth in Section 3b. of this Agreement.

i. **Credit Inquiries.** You authorize us to obtain a credit report on you for any legal purpose in connection with this loan, including any update, extension of credit, review, or collection of this loan. Upon request, we will tell you the name and address of the credit bureau furnishing any report.

j. **Bankruptcy.** You represent that you are not contemplating bankruptcy and that you have not consulted with an attorney regarding bankruptcy in the past six months. Any communication with us required or permitted under the Federal Bankruptcy Code must be in writing, must include your loan number, and must be sent to us at the address for GoodLeap.

6. **GRANT OF SECURITY INTEREST IN COLLATERAL.** As consideration for the loan we are providing and to secure your obligations under this Agreement, you hereby grant to us a security interest in the following property (collectively "Collateral"):

a. all Purchased Goods excluding the roof and related roofing materials, if any (such Purchased Goods which excludes the roof and related roofing materials are referred to in this Agreement as "Collateralized Goods");

b. all accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to the Collateralized Goods;

c. all proceeds from warranty claims related to the Collateralized Goods, the Home Improvement Agreement and any Operations and Maintenance Agreement;

d. all your rights, title, interests, and remedies under all agreements and other documentation relating to the Collateralized Goods (including, without limitation, the Home Improvement Agreement, and Operations and Maintenance Agreement);

e. all consideration received from the collection, sale or other disposition of the Collateralized Goods, including any payment received from any insurer arising from any loss, damage or destruction of any Collateralized Goods and any other payment received as a result of possessing any Collateralized Goods, or any other proceeds of Collateralized Goods.

You authorize us to file on your behalf any documentation, including but not limited to a copy of this Agreement, a UCC financing statement and a county fixture filing to perfect our security interest in the Collateralized Goods (in case a third party seeks to classify the panels as a fixture). If you are refinancing your home, upon request, we may agree to lift our county fixture filing, on the Solar Equipment for a limited period of time, provided we will be able to refile upon closing of the mortgage refinancing. A $200 fee will be assessed for the removal and refiling of our county fixture filing. If you sell your home, your loan must be paid in full to remove the UCC financing statement and county fixture filing. The actual costs incurred, if any, of removing a UCC financing statement or country fixture filing will be added to your payoff amount if you elect to pay your loan in full before the end of the loan term. Alternatively, this loan agreement may be transferred to the new home owner if the new home owner qualifies for the loan product as outlined in Section 12. A $300 transfer fee will be assessed for any transferred loan agreements.

7. **INDEMNIFICATION.** You agree to indemnify, defend and hold harmless us and our affiliates against any loss, liability, or damage that arises out of or relates to the transactions contemplated by this Agreement.

8. **DEFAULT.** You will be in default under this Agreement if any of the following occurs:

a. you fail to make any payment under this Agreement within fifteen (15) days of the date such payment is due;

b. you fail to perform any of your obligations under this Agreement and you fail to cure such failure to perform to our reasonable satisfaction within thirty (30) days after receiving notice from us of your failure to perform;

c. you terminate the Home Improvement Agreement without our consent after any loan proceeds have been disbursed;

d. you remove, modify, sell or otherwise transfer the Collateral without our approval;

e. any representation made by you on your loan application or this Agreement is false in any material respect when made;

THIS IS A COPY
The authoritative copy of this record is held at NA3.docusign.net

f. any of the following occurs (each a "Bankruptcy Event"): (1) you make an application for the appointment of a receiver, trustee or custodian or a receiver, trustee or custodian is appointed for you or a majority of your assets; (2) you initiate or consent to any legal proceedings under the Bankruptcy Code, or equivalent law providing for the relief of debtors; (3) you make an assignment for the benefit of creditors; or (4) you have a petition in bankruptcy or similar relief of debtors filed against you, which is not withdrawn or discharged within thirty (30) days of being filed.

9. **REMEDIES.** Our remedies if you default on this Agreement include the following (to the fullest extent permitted by law):

a. **General.** In the event that you are in default under this Agreement, we may:

1. **Accelerate your Loan:** We would declare our loan immediately due and payable. This requires you to pay in full the unpaid principal amount of the loan, all accrued interest, and any other amounts due under this agreement. Your loan will become immediately due and payable to us under a Bankruptcy Event, regardless of whether or not we take any action.

2. **Provide a report to the credit bureaus detailing any late payments, missed payments or other defaults:** As required by law, you are hereby notified that a negative report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of this Agreement.

3. **Disable / Foreclose on the Collateral:** (and exercise any other rights with respect to the Collateral that we have under this Agreement or applicable law). This includes disabling the Equipment remotely or by entering upon your property; and/or entering upon your property and removing and taking possession of the Collateral and then selling, leasing, or otherwise disposing of the property.

4. **Pursue all remedies available under applicable law:** Including those of a secured creditor as permitted by applicable law.

5. **Stop making credit extensions under your loan:** Including ceasing any funding that may be pending on your loan as permitted by applicable law.

b. **Cost Reimbursement; Application of Proceeds.** Unless otherwise prohibited by state law, you are to promptly reimburse us, with interest, for all costs and expenses incurred in exercising our remedies related to this Agreement. If we choose to foreclose on the Collateral, we will apply any cash proceeds in the order of priority set forth in Section 3b. of this Agreement and then to you or as a court may otherwise direct.

c. **Deficiency Judgment.** To the fullest extent permitted by law we may require that you pay any amounts payable by you under this Agreement less any proceeds that we realize from our exercise of our remedies under this Agreement.

TO THE FULLEST EXTENT PERMITTED BY LAW, YOU ARE PERSONALLY LIABLE FOR ALL AMOUNTS PAYABLE UNDER THIS AGREEMENT. WE ARE NOT REQUIRED TO FORECLOSE ON THE COLLATERAL BEFORE INITIATING PROCEEDINGS AGAINST YOU AND YOUR ASSETS.

Our rights under this Agreement are cumulative and we may exercise these rights at any time if you default. In the event that we exercise any of our rights or remedies under this Agreement, you will continue to be in default until such time that you pay to us all amounts due and payable to us and you have cured any and all defaults. OUR FAILURE TO TAKE ANY ACTION OR DELAY TAKING ANY ACTION RELATED TO YOUR DEFAULT, OR SIMILAR OR UNRELATED DEFAULT, DOES NOT WAIVE, OR IMPLY A WAIVER OF ANY OF OUR RIGHTS UNDER THIS AGREEMENT.

10. **TERMINATION.** We may terminate this Agreement during any period in which a Force Majeure Event prevents, limits or otherwise impairs our ability to perform our obligations under this Agreement. A Force Majeure Event means any circumstance beyond the Parties' reasonable control, including but not limited to any act of nature, war, terrorism, rebellion, labor dispute, work stoppage, civil disorders, act of government, or any other similar major cause. This Agreement will terminate automatically if the final loan disbursement does not occur within one hundred eighty (180) days of the date you most recently received credit approval by us to enter into this Agreement. No delay in our exercise of the foregoing termination rights shall constitute a waiver of our continuing rights to terminate the Agreement. In addition, you may terminate this Agreement at any time prior to our disbursement of the loan proceeds, by sending advance written notice to us. The terms of this Agreement that would, by their express nature, survive the termination of this Agreement will survive and be enforceable under this Agreement. Upon termination of this Agreement, our security interest in the Collateral will terminate.

11. **NOTICES AND OTHER INFORMATION** You agree to notify us if your name, email, or mailing address changes.

THIS IS A COPY

The Authoritative Copy of this record is held at NA3.docusign.net

12. **ASSIGNMENT/REGISTERED FORM.** You may not assign or transfer your rights or obligations under this Agreement without our prior written consent. If you sell your home, the loan may be assumable, if the new homeowner qualifies under GoodLeap's underwriting guidelines and if the assumption is approved by GoodLeap. GoodLeap holds the right to deny the assumption even if the new homeowner qualifies under GoodLeap's underwriting guidelines. To apply for an assumption, you must notify GoodLeap in writing at least thirty (30) days in advance, using the contact information noted at the top of this Agreement. If the assumption is approved, the warranties and operations and maintenance service obligations (if any) pertaining to the Purchased Goods must be transferred to the new homeowner. You agree that we may assign or transfer all or a portion of this Agreement and the related documents to any third party or affiliate. GoodLeap or its agent, acting as a non-fiduciary agent of the Borrower, shall maintain, a register within the meaning of U.S. Treasury Regulations Sections 5(f).103-1(c) on which it will record the names and addresses of each owner and their rights to principle and stated interest. Any transfer of all or a portion of a beneficial interest hereunder shall be recorded on such register. All parties to this agreement or their agents may treat each person or entity whose name is recorded in such register pursuant to the terms hereof as the applicable participant for all purposes under this Agreement. The register shall be available for inspection from time to time by any party hereto upon reasonable prior notice to GoodLeap or any of its agents. **YOU AUTHORIZE US TO PROVIDE TO A THIRD PARTY OR AFFILIATE ANY INFORMATION THAT THEY MAY REQUEST IN CONSIDERING OR IMPLEMENTING A PURCHASE OF OUR RIGHTS UNDER THIS AGREEMENT.** Arizona borrowers only: we will notify you if the entity responsible for allowing the assignment of your loan changes.

13. **LIMITATION OF LIABILITY. TO THE EXTENT PERMITTED BY APPLICABLE LAW, OUR LIABILITY TO YOU UNDER THIS AGREEMENT, IF ANY, SHALL BE LIMITED TO DIRECT, ACTUAL DAMAGES ONLY. YOU AGREE THAT IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR CONSEQUENTIAL, INCIDENTAL, PUNITIVE, EXEMPLARY, SPECIAL OR INDIRECT DAMAGES.**

14. **GOVERNING LAW AND MISCELLANEOUS.**

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

Except for the Arbitration agreement below, this Agreement shall be governed by federal law and, to the extent state law applies, the substantive laws of the state where the Residence is located. If any provision of this Agreement cannot be enforced, the rest of this Agreement will stay in effect. No amendment of this Agreement will be valid unless in writing and signed by both Lender and you (the Loan Closing Certificate shall not be deemed an amendment of this Agreement and is fully incorporated into this Agreement). This Agreement represents the entire agreement between the Parties regarding your loan. Our rights under this Agreement shall inure to the benefit of our successors and assigns, and your obligations under this Agreement shall be binding upon your heirs, personal representatives and permitted assigns.

15. **ARBITRATION AGREEMENT.**
**All claims and disputes arising out of or relating to this Agreement (hereafter, "Dispute(s)") shall be resolved by binding arbitration on an individual basis. The arbitrator shall also decide any issues relating to the making, validity, enforcement, or scope of this arbitration agreement, arbitrability, defenses to arbitration including unconscionability, or the validity of the jury trial, class action or representative action waivers (collectively, "arbitrability" issues). YOU HEREBY WAIVE ANY CONSTITUTIONAL AND STATUTORY RIGHTS TO GO TO COURT AND HAVE A TRIAL IN FRONT OF A JURY. FURTHER, UNLESS YOU OPT OUT OF ARBITRATION, YOU ALSO AGREE TO WAIVE ANY RIGHT TO BRING OR PARTICIPATE IN A CLASS OR REPRESENTATIVE ACTION IN COURT OR IN ARBITRATION. The arbitrator shall have the authority to award any relief, including injunctive relief, which is available under applicable law. Each party shall bear the expense of its own counsel, experts, witnesses and preparation and presentation of proofs. However, the arbitrator may award you reasonable attorney's fees and costs if this is expressly authorized by applicable law. Upon request, we will pay a portion of the fees and expenses of the arbitrator and the administrative fees and expenses of the arbitration. The arbitrator shall issue a written award describing the essential findings supporting the award. All hearings in the arbitration shall take place within the federal judicial district where the Residence is located; the arbitrator's award shall be final and judgment on the arbitrator's award may be entered by the federal District Court. The arbitration shall be administered by JAMS pursuant to its Streamlined Arbitration Rules (the "Rules"). A copy of the JAMS Streamlined Arbitration Rules can be obtained from JAMS at https://www.jamsadr.com/rules-streamlined-arbitration or (800) 352-5267. The arbitrator shall be selected from the JAMS panel of neutrals and shall be a retired federal judge, a retired state appellate judge, or a retired state trial judge**

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

(in that order of preference). You agree that this agreement to arbitrate may be enforced by us or our affiliates, subsidiaries, or parents, and (g) each of their officers, directors, employees, and agents. This arbitration agreement is made pursuant to a transaction involving interstate commerce. The Federal Arbitration Act (9 U.S.C. §§1-16) (the "FAA") shall govern this agreement to arbitrate including all arbitrability issues. No state law respecting arbitrability issues shall govern this agreement to arbitrate. Subject to and without limiting the foregoing, federal law shall apply to all other issues that arise under federal law and applicable state law as set forth in Section 14 above shall apply to all other issues that arise under state law (without reference to a state's choice of law rules). YOU MAY OPT OUT OF ARBITRATION BY SENDING US WRITTEN NOTICE WITHIN 15 DAYS OF SIGNING THE AGREEMENT STATING THAT YOU WISH TO "OPT OUT OF THE AGREEMENT TO ARBITRATE DISPUTES." THE OPT-OUT NOTICE SHOULD BE SENT TO THE FOLLOWING ADDRESS: GoodLeap, 8781 Sierra College Blvd., Roseville, CA 95661. If you do not opt out, but any part or parts of your agreement to arbitrate are unenforceable then GoodLeap and you agree that such specific part or parts shall be of no force or effect and shall be severed, but the remainder of this agreement to arbitrate shall continue in full force and effect. If, however, the entire agreement to arbitrate or your waiver of the right to participate in class, representative or to arbitrate injunctive relief claims is unenforceable then the agreement to arbitrate shall be of no force or effect.

JUDICIAL REFERENCE FOR CALIFORNIA BORROWERS. IF THE RESIDENCE IS IN CALIFORNIA AND YOU OPT-OUT OF ARBITRATION, GOODLEAP AND YOU AGREE THAT ANY DISPUTES WILL BE RESOLVED IN THE SUPERIOR COURT FOR THE COUNTY IN A GENERAL REFERENCE PURSUANT TO THE CALIFORNIA CODE OF CIVIL PROCEDURE ("CCP"), § 638(a). YOU ACKNOWLEDGE AND AGREE THAT IN A REFERENCE ACTION, ANY DISPUTE WILL BE HEARD BY A REFEREE AND NOT BY A SUPERIOR COURT JUDGE AND JURY AND HEREBY WAIVES HIS CONSTITUTIONAL AND STATUTORY RIGHTS TO HAVE A TRIAL IN FRONT OF A JUDGE AND JURY. The Referee shall be appointed pursuant to CCP § 640 in the absence of agreement on the selection. The Referee shall have the same qualifications as the arbitrator. Upon request, GoodLeap will pay your portion of the fees and expenses of the Referee.

NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN, IF THE RESIDENCE IS IN CALIFORNIA AND YOU DO NOT OPT-OUT OF ARBITRATION, YOU MAY SEEK PUBLIC INJUNCTIVE RELIEF IN ARBITRATION TO THE EXTENT PERMITTED BY APPLICABLE LAW. IF, HOWEVER, ARBITRATION IS UNENFORCEABLE, IN WHOLE OR IN PART, THEN GOODLEAP AND YOU AGREE THAT SUCH DISPUTES WILL BE RESOLVED IN THE SUPERIOR COURT FOR THE COUNTY IN A GENERAL REFERENCE PURSUANT TO THE CALIFORNIA CODE OF CIVIL PROCEDURE ("CCP"), § 638(a). YOU ACKNOWLEDGE AND AGREE THAT IN A REFERENCE ACTION, ANY DISPUTE WILL BE HEARD BY A REFEREE AND NOT BY A SUPERIOR COURT JUDGE AND JURY AND HEREBY WAIVES HIS CONSTITUTIONAL AND STATUTORY RIGHTS TO HAVE A TRIAL IN FRONT OF A JUDGE AND JURY. The Referee shall be appointed pursuant to CCP § 640 in the absence of agreement on the selection. The Referee shall have the same qualifications as the arbitrator. Upon request, GoodLeap will pay your portion of the fees and expenses of either the arbitrator or the Referee, as the case may be, any your portion of any administrative fee that the arbitrator, referee or JAMS may require.

Nothing in Section 15 shall prejudice the right of either party to: (a) seek and obtain such provisional relief or remedies as shall otherwise be available judicially pending appointment of the arbitrator or referee (b) bring their Dispute in small claims court on an individual basis, (c) exercise such self-help remedies as are authorized by law or contract, or (d) pursue judicial foreclosure as set forth in Section 9.

BY PLACING YOUR INITIALS BELOW THIS NOTICE YOU CERTIFY THAT YOU HAVE READ AND AGREE TO SECTION 15 IN ITS ENTIRETY.

**Borrower's Initials**  *MK*

GoodLeap, LLC  *Matt Dawson*

**Matt Dawson, Co-Founder**

16. **ECOA NOTICE.** The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, or age (providing that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal Agency

THIS IS A COPY
The authoritative copy of this record is held at NA3.docusign.net

that administers compliance with this law concerning this creditor is: The Federal Trade Commission, Consumer Response Center, Washington, DC 20580. Phone: 1-877-382-4357.

**17. BUYER'S RIGHT TO CANCEL. YOU, THE BUYER, MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION. SEE THE ATTACHED NOTICE OF CANCELLATION FORM FOR AN EXPLANATION OF THIS RIGHT.**

**By signing below I/we confirm that I/we have read and agree to the terms in the Loan Agreement**

Borrower's Signature: _Musa konateh_    Date: _Feb 24, 2024_

EFF7C585AC2F429...

GoodLeap, LLC  _Matt Dawson_

**Matt Dawson, Co-Founder**

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net



Exhibit A: Example of Loan Closing Certificate

**Borrower:**                                   **Residence Address ("Home"):**

**Email:**

**Phone:**

**Loan Agreement Number:**

**Product Type:**

This Loan Closing Certificate confirms that your Loan with GoodLeap has been funded and the following terms have been set:

| Loan Summary | | | |
|---|---|---|---|
| **Loan Start Date** | **First Payment Date** | **Recurring Payment Date** | **Maturity Date** |

| Loan Terms | | | |
|---|---|---|---|
| **Loan Term** | **Total Loan Amount** | **Initial Monthly Payment** | **Interest Rate / APR** |
| **Target Balance** | **Target Balance Date** | **Adjusted Monthly Payment\*** | |

\*Adjusted monthly payment assumes that no prepayment was made and the Target Balance was not met by the Target Balance Date, and you do not change the Autopay payment election.

Your interest rate/APR and monthly payments may vary depending upon whether you cancel or add Autopay payments during the term of the loan.

| Solar/Storage System Description |
|---|

**Installation Contractor:**                             **\*Home Improvement Agreement Number:**

\*Purchased Goods under this Loan Agreement will be detailed in your Home Improvement Agreement

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net



Credit Score Disclosure

---

**H-4. Model form for credit score disclosure exception for loans not secured by residential real property**

**GoodLeap**

**Your Credit Score and the Price You Pay for Credit**

| Your Credit Score | |
|---|---|
| Your Credit Score | **Source:** transunion<br>**Date:** Feb 24, 2024<br><br>**679** |

| Understanding Your Credit Score | |
|---|---|
| What you should know about credit scores | Your credit score is a number that reflects the information in your credit report.<br><br>Your credit report is a record of your credit history. It includes information about whether you pay your bills on time and how much you owe to creditors.<br><br>Your credit score can change, depending on how your credit history changes. |
| How we use your credit score | Your credit score can affect whether you can get a loan and how much you will have to pay for that loan. |
| The range of scores | Scores can range from a low of 300 to a high of 850.<br><br>Generally, the higher your score, the more likely you are to be offered better credit terms. |
| How your score compares to the scores of other consumers | Your credit score ranks higher than 32 percent of U.S. consumers. |

COPY VIEW

THIS IS A COPY
The authoritative copy of this record is held at NA3.docusign.net

**Checking Your Credit Report**

| | |
|---|---|
| What if there are mistakes in your credit report? | You have a right to dispute any inaccurate information in your credit report. If you find mistakes on your credit report, contact the consumer reporting agency. |
| | It is a good idea to check your credit report to make sure the information it contains is accurate. |
| How can you obtain a copy of your credit report? | Under federal law, you have the right to obtain a free copy of your credit report from each of the nationwide consumer reporting agencies once a year. |
| | To order your free annual credit report – |
| | By telephone:   Call toll-free: 1-877-322-8228 |
| | On the web:   Visit www.annualcreditreport.com |
| | By mail:   Mail your completed Annual Credit Report Request Form (which you can obtain from the Federal Trade Commission's web site at http://www.ftc.gov/bcp/conline/include/requestformfinal.pdf) to: Annual Credit Report Request Service P.O. Box 105281 Atlanta, GA 30348-5281 |
| How can you get more information? | For more information about credit reports and your rights under federal law, visit the Consumer Financial Protection Bureau's website at www.consumerfinance.gov/learnmore. |

COPY VIEW

DocuSign Envelope ID: ED9BC709-8D9F-42AB-A9BB-3B70EB5F355A
THIS IS A COPY
the authentic copy of this record is held at NA3.docusign.net



Notice of Right To Cancel

**Date of the Agreement:**    Feb 24, 2024

**FOR THE BORROWER:**

You may cancel this transaction, without any penalty or obligation, within three business days from the above date.

If you cancel, any property traded in, any payment made by you under the contract or sale, and any negotiable instrument executed by you will be returned within ten business days following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be cancelled.

If you cancel you must make available to the seller at your residence, in substantially as good condition as when received any goods delivered to you under this contract or sale; or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.

If you do make the goods available to the seller and the seller does not pick them up within twenty days of the date of your notice of cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.

To cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice or any other written notice, or send a telegram to GoodLeap, at 8781 Sierra College Blvd., Roseville, CA 95661 not later than midnight of  2/28/2024

(Month/Day/Year)

I hereby cancel this transaction.


_____                    _____

Borrower                                                Date

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net



Notice of Right To Cancel

**Date of the Agreement:** Feb 24, 2024

**FOR THE BORROWER:**

You may cancel this transaction, without any penalty or obligation, within three business days from the above date.

If you cancel, any property traded in, any payment made by you under the contract or sale, and any negotiable instrument executed by you will be returned within ten business days following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be cancelled.

If you cancel you must make available to the seller at your residence, in substantially as good condition as when received any goods delivered to you under this contract or sale; or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.

If you do make the goods available to the seller and the seller does not pick them up within twenty days of the date of your notice of cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.

To cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice or any other written notice, or send a telegram to GoodLeap, at 8781 Sierra College Blvd., Roseville, CA 95661 not later than midnight of  2/28/2024

(Month/Day/Year)

I hereby cancel this transaction.

_____                    _____
Borrower                                                   Date

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net



Privacy Policy and Information Sharing Notice

**Privacy Policy:** We take our responsibility to protect the privacy and confidentiality of customer information seriously. We maintain safeguards that comply with federal standards to secure and protect your information. This policy applies to consumers who are current or former customers of GoodLeap, LLC ("GoodLeap"). We gather information from your application, when you make a payment, consumer credit reporting agencies, public sources, and other data sources. We may only disclose this data as permitted by law. We may provide your information without your consent to regulatory or law enforcement agencies as permitted by law.

**Information Sharing and Opt-Out:** Financial companies choose how they share your personal information. Federal law gives you the right to limit some, but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. For additional information visit: http://www.goodleap.com/privacy.html.

The types of personal information we collect and share include, but aren't limited to:

- Account Balances and Payment History
- Social Security Number and Income
- Address
- Bank Account Information
- Credit History and Scores
- Phone Numbers

All financial companies need to share customers' personal information to conduct their everyday business. In the section below, we list the reasons companies can share their customers' information; the reason we share this information; and whether you can limit this sharing. If you have any questions please call (877) 290-9991.

| Reasons we share your information | Do we share this information? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes such as to process your transactions, maintain your account, respond to court orders and legal investigations, or report to the credit bureaus | **YES** | **NO** |
| For our own marketing purposes to offer products and services to you | **YES** | **NO** |
| For joint marketing with other financial companies – to offer other services to you | **YES** | **NO** |
| For our affiliates everyday business purposes – information about your transactions and experiences | **NO** | **NA** |
| For our affiliates everyday business purposes – information about your creditworthiness | **NO** | **NA** |
| For our affiliates to market to you | **NO** | **NA** |
| For non-affiliates to market to you | **NO** | **NA** |

THIS IS A COPY
The Authoritative copy of this record is held at NA3.docusign.net

| | |
|---|---|
| **How does GoodLeap protect my personal information?** | To protect your information from unauthorized access and use, we use security measures that comply with federal law. These include computer safeguards and secured files and buildings. |
| **How does GoodLeap collect my personal information?** | When you apply for a loan or make a payment. We also collect information from other data providers such as credit bureaus. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only: |
| | - Sharing for affiliates' business purposes – info about your creditworthiness |
| | - Affiliates from using your information to market to you |
| | - Sharing with non- affiliates to market to you |
| **Affiliates** | Companies related by common ownership |
| **Non-Affiliates** | Companies not related by ownership or control. Non-affiliates we can share with include other financial services companies or non-financial services companies. |
| **Joint Marketing** | A formal agreement between non-affiliated companies to market to you |

For CA and VT residents only: Under California and Vermont law we will not share information we collect about you with companies outside of GoodLeap unless the law allows.

### EXPRESS WRITTEN CONSENT TO COMMUNICATE OR CALL VIA CELL PHONE OR OTHER MEANS

We take your privacy seriously. By signing this document, you are providing express written consent for GoodLeap, LLC ("GoodLeap") or companies working on our behalf to call you (including through automated means: e.g. autodialing, text, and pre-recorded messaging) via telephone, mobile device or cell phone (including SMS and MMS) and/or via email, even if your telephone number is currently listed on any state, federal, or national Do-Not-Call (DNC) list.

Consent is not required to conduct business with GoodLeap and this consent can be withdrawn at any time by calling (877) 290-9991 or requesting by mail at GoodLeap: 8781 Sierra College Blvd, Roseville, CA 95661. If you withdraw your consent you will be put on GoodLeap's internal Do-Not-Call list.

For NV residents only: We are providing this notice under state law. You may be placed on our internal Do-Not-Call list by calling (877) 290-9991. Nevada asks us to provide their contact information. Office Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St. Suite 3900, Las Vegas, NV 89101. Phone: (702) 486-3132; Email: bcinfo@ag.state.nv.us

Borrower's Signature: _Musa konateh_     Date: __Feb 24, 2024__

DocuSigned by:
EFF7C586AC2F429...

THIS IS A COPY
The authoritative copy of the record is held at NA3.docusign.net

**OPTIONAL OPT OUT OF CREDIT BUREAUS FROM SHARING PERSONAL INFORMATION FOR PRESCREENED OFFERS**

I understand that I have the ability to opt out of credit bureaus providing my personal information to third parties, including other lenders for prescreened offers, when my credit is pulled. Below, I select whether I would like GoodLeap to opt out from prescreened offers on my behalf. Whether or not I choose opt out **WILL NOT HAVE ANY IMPACT ON MY CREDIT APPLICATION WITH GOODLEAP**. This voluntary opt out will be effective for five (5) years from the date of this election. At any time, I/we may opt-in to again receive prescreened offers of credit or insurance at the website: www.optoutprescreen.com.

[ X ]   I/we AUTHORIZE GoodLeap to utilize my/our information to opt-out from credit bureaus from providing my personal information to third parties for prescreened firm offers of credit or insurance on my/our behalf through the website: www.optoutprescreen.com upon loan funding.

[   ]   I/we DO NOT AUTHORIZE GoodLeap to utilize my/our information to opt-out from credit bureaus from providing my personal information to third parties for prescreened firm offers of credit or insurance on my/our behalf through the website: www.optoutprescreen.com upon loan funding.

Borrower's Signature:  *Musa konateh*
DocuSigned by:
EFF7C586AC2F429...

Date:  Feb 24, 2024

COPY VIEW

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net



Member Services Request

x  New                          Update          **Date:** ___Feb 24, 2024___    **Member No:** _____

### IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT

To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify, and record information that identifies each person when opening a new account. What this means for you: When you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying information or documents.

### MEMBERSHIP

x  I acknowledge and agree that to be eligible for membership in a partner Credit Union that I may need to enroll, or be enrolled, in such credit union's associated foundation or charitable organization. In that event, I agree to enroll in one of the organizations listed below if my loan is sold to a partner Credit Union. I understand that my name and contact information will be shared with the listed organization. One-time fees that apply for membership and/or any associated foundation or charitable donations, if applicable, will be paid by the Partner Credit Union.

| Partner Credit Union | Field of Membership (FoM) Associations |
|---|---|
| **All In Credit Union** | Association of the United States Army |
| **American Heritage Federal Credit Union** | Kids-n-Hope Foundation |
| **Bellco Credit Union** | Bellco Foundation |
| **Teachers Federal Credit Union** | Open FoM (No association needed) |

Membership in a Partner Credit Union will only occur if your loan is sold to that Credit Union.

### MEMBER/OWNER INFORMATION

**Member/Owner Name:**  Musa Konateh                    **Date of Birth:**  1960-03-02

**Residence Address:**  6401 GUYER AVE                  **Email:**  mkonateh553@gmail.com
                        PHILADELPHIA, PA, 19142

**SSN/TIN:**  ###-##-8851                               **Phone Number:**  (610) 803-7881

### ACCOUNT OWNERSHIP AND TYPE

A Share Account is required to become a member of one of our participating Credit Unions. There is no cost to open an account, and the Credit Union who purchases your loan will deposit a minimum required initial amount into your account on your behalf.

**Account Ownership:**   x  Individual          **Account Type:**   x  Primary Share Account

THIS IS A COPY
The authoritative copy of this record is held at NA3.docusign.net

### TIN CERTIFICATION AND BACKUP WITHHOLDING INFORMATION

Under penalties of perjury, I certify that:

x   1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued), and

x   2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

x   3. I am a U.S. citizen or other U.S. person. For federal tax purposes, you are considered a U.S. person if you are: an individual who is a U.S. citizen or U.S. resident alien; a partnership, corporation, company, or association created or organized in the United States or under the laws of the United States; an estate (other than a foreign estate); or a domestic trust (as defined in Regulations Section 301.7701-7).

Certification Instructions. Check the box for item 2 above if you have been notified by the IRS that you are currently subject to backup withholding. By checking this box, this serves to strike out the language related to underreporting. Complete a W-8 BEN if you are not a U.S. person. If a W-8 BEN is completed, your signature does not serve to certify this section.

### ACKNOWLEDGMENT AND AUTHORIZATION

By signing or otherwise authenticating I agree to be notified of my membership in a Credit Union and any Association membership when my loan is sold. I acknowledge that I will also be provided with relevant documents, policies and disclosures, including any membership agreement(s), at that time. I further agree to review the membership agreement(s), policies and disclosures related to any Credit Union and/or Association and, if accepted, I/we agree to comply with the terms set forth in those documents, policies, disclosures and any amendments thereto to become a Credit Union member and shareholder. I further acknowledge and agree that if I sign this membership application and a Credit Union does not purchase my loan that I will not become a member of any Credit Union or any affiliated Association as a result of my loan from GoodLeap. All terms, conditions, form of account ownership, account selection and other information indicated on this document applies to all of the accounts listed unless the purchasing Credit Union is notified in writing of a change or if I opt out prior to my loan being sold.

**Member/Owner:** *Musa Konateh*    **Date:** Feb 24, 2024
EFF7C586AC2F429...

CREDIT UNION OFFICIAL: _____

FOR CREDIT UNION USE ONLY
Date of Membership:_____    Opened/Approved By:_____    Membership Eligibility:

Member Verification:_____
Verification List(s) Checked: ☐  OFAC: ☐  Other:_____
List Verification Completion Date:_____  By:

Reports Checked: ☐  Credit Report ☐  Check Verification Report ☐  Other:_____
Overdraft Protection Opt-in Completion Date:_____

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net



Payment Authorization Form

GoodLeap is providing this document to you to complete your loan payment method.

[ X ] **Payment by Autopay:** GoodLeap offers Autopay as a service to our clients. By paying with Autopay, you authorize GoodLeap and its agents, service providers, and successors or assignees to initiate preauthorized electronic fund transfers ("Autopay") on or after the Recurring Payment Day specified in the Loan Closing Certificate from your account described below or from any updated bank account that you subsequently supply to us (the "Account"). If the Autopay is not made on the Recurring Payment Day for whatever reason, GoodLeap will deduct the payment on the next day that GoodLeap processes such payments, or as soon thereafter as practicable. The Autopay amount will be equal to the Initial Monthly Payment and then the Adjusted Monthly Payment as shown in your Loan Agreement (or any modified amounts we may later agree to) and will continue until your loan is paid in full or you cancel this authorization. If the amount of your payment changes from this amount, we will provide notice at least ten (10) days before the scheduled date of the payment. You certify that you are the owner or joint owner of the Account. We are not responsible for bank charges you may incur due to dishonored Autopay. We may reinitiate any Autopay from the Account that is unsuccessful up to two times, until it is successful. You further authorize us to correct any erroneous transactions with credits or debits to your Account, if necessary.

### Information for Autopay

**Please add your banking information to reduce your rate by 0.50% which could save you up to $3,807.41 in interest charges over the life of your agreement.**

Bank/Credit Union Name  ███████

Routing / ABA Number  ███████         Bank Account Number  ███████



Please know that you may terminate this authorization at any time by either (1) paying the remaining balance due, (2) sending written notice to us at **8781 Sierra College Blvd, Roseville, CA 95661**, or (3) calling 1-800-345-9372. It may take three business days for the change to take effect. Cancelling Autopay does not terminate or relieve you of making all your payments on time each month. **Cancelling Autopay will remove the 0.50% discount, increasing your interest rate/APR, which may result in you paying an additional $3,807.41 in interest charges over the life of your agreement.**

[ ] **Payment by Alternative Method:** If this option is selected, you elect NOT to make your scheduled monthly payments by Autopay. Instead each month, you must mail a check to us or arrange for payments to be made in some other manner acceptable to GoodLeap. **There may be additional payment processing fees when electing alternative payment methods, such as debit card payment charges, where allowed by law.** Also, by choosing this option you understand that the interest rate/APR and monthly payment will not include the 0.50% discount if you had selected to pay by Autopay.

**PLEASE KEEP A COPY OF THIS DOCUMENT FOR YOUR RECORDS.**

Borrower's Signature: *Musa Konateh*
DocuSigned by:
EFF7C586AC2F429...

Date: Feb 24, 2024

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net



**THANK YOU**

**EXHIBIT "G"**



## PREPARED FOR

Musa Konateh
6401 Guyer Ave,
Philadelphia, PA 19142

## PREPARED by

Velocity Energy & Home Solutions

855-886-1865
customercare@velocityenergy.us



CONTRACTOR LICENSE NUMBER: PA-171823



# PV SYSTEM INFORMATION

### <u>System Details</u>

5.60 kW DC Solar Array

**System Size (kW DC)**                    5.60 kW

**Current Consumption**                    5.88 MWh

**Estimated Annual Production (kWh)**      5.88 MWh

**System's Utility Offset**                100%

**Micro Inverters:**                       14 Enphase IQ8+ Inverter w/ 25yr. Mfg. warranty

**Monocrystalline Modules:**               14 Phono 400  Panels w/25yr. Mfg. warranty

**Array Racking System:**                  Eco X w/ 25yr. mfg/ warranty



# SAVINGS THAT WILL ALWAYS WIN

The average electricity bill has risen 4 percent annually every year for the past decade. Your Solar loan will remain the same for the entirety of its duration, meanwhile, the average electric bill will rise by 70% over the course of 25 years.



*Disclaimer: these projected numbers are only a fictitious example used in good faith to show the customer the projected growth of an average electricity bill versus the flat sustained rate of a Solar loan. The accurate and complete loan terms will be listed in your finance agreement.*



# COST OF OWNERSHIP

| | |
|---|---|
| **Loan Amount** | **$41,070.56** |
| **Tax Credit Available Loan** | **$12,321.17** |
| **After Tax Credit Annual** | **$28,749.39** |
| **Estimated SRECs Produced** | **5.59** |
| **Current SREC Market Value** | **$35.00** |
| **Estimated Annual State Income** | **$195.64** |
| **Rate** | **4.99%** |
| **Number of Payments** | **300** |
| **Monthly Payment** | **$174.99** |
| **Monthly Payment Without Tax Credit Applied** | **$249.27** |

*The first monthly payment on the loan is due approximately 60 days after installation. The calculation of the monthly payments for the first 18 months following installation (which includes the first 17 payments) (the "Initial Period") assumes that you will pay down the loan during the Initial Period by 30%. If you make aggregate principal payments in such amount during the Initial Period, your monthly payments following the Initial Period will remain the same as during the Initial Period. If during the Initial Period you elect to pay an amount that is less than 30% of your loan amount, your monthly payment beginning upon conclusion of the Initial Period and throughout the rest of the term of the Loan will be increased to amortize the full principal loan balance (which would be greater than the originally assumed amount) over a period which is effectively 18 months shorter. Conversely, if you make a payment of greater than 30% of the your loan amount during the Initial Period, your monthly payments following the conclusion of the Initial Period will be reduced to reflect the payment of a lesser principal balance than originally assumed for the balance of the term. Please carefully review the details of your loan, including the payment amounts, provided in your loan agreement.*



# WARRANTIES

✔ **25-Year Enphase Warranty**

✔ **25-Year Module MFG. Warranty**

✔ **25-Year Racking/ Mounting MFG. Warranty**

✔ **25-Year Roof Leak Warranty** *as it directly relates to the means & methods of our roof-top solar installation*

✔ **25-Year Limited Workmanship and Installation Warranty.** *Velocity Contractors warrants that the System will be constructed and installed in a good workmanlike manner according to the standards of care and diligence generally practiced by solar engineering, construction, and installation companies when installing residential photovoltaic solar power systems of a similar size and type as the System in the geographic region where Your Property is located, and pursuant to (i) good engineering design practices, (ii) manufacturer's instructions, (iii) applicable law (including local codes and standards), (iv) required governmental approvals and permits, and (v) applicable requirements of the local utility.*

X_____          2/26/2024
Authorized Installer Signature                _____
                                             Date

✔ **25-Year Limited Roofing Penetration Warranty.** *Velocity Contractors warrants Your roof against damage and water infiltration at each roofing penetration made by Velocity Contractors in connection with the installation of the System and the surrounding area of each such penetration (collectively, the "Covered Roof Areas"). Velocity Contractors will repair damage to Your roof and repair or compensate You for actual physical damage to Your property resulting from any water infiltration in the event of failure or defects in the Covered Roof Areas.*



# CUSTOMER AGREEMENT

A Federal Income Tax Credit of 30.00% is available to qualified applicants. Filing of any Federal Tax Form(s) is the sole responsibility of the Homeowner.

Customer also understands Income Tax Credit is not available for all customers and a proper tax professional should be consulted for any questions regarding any tax related inquiries.

Customer understands that he/she is responsible for all amounts due under this contract and that the ability to obtain incentives and/or tax credits does not impact the amounts due to Velocity Energy Solutions under this Agreement.

Owner has read and understands this agreement, including all terms and conditions.

**NOTE: The Final System Size is subject to change upon the completion of a site survey.**

X *Musa Konateh*          2/26/2024
_____     _____
Authorized Customer Signature          Date
   Musa Konteh
_____
Print Customer Name

X_____     _____
Authorized Customer Signature          Date

_____
Print Customer Name

X *frank washart*          2/26/2024
_____     _____
Authorized Signature          Date
Velocity Energy & Home Solutions, LLC

   Frank Washart
_____
Name

_____
Title



# RIGHT TO CANCEL

Customer has the right to cancel this agreement within the 3 day right of rescission, the 3 day right of rescission states that the customer has 3 business days to cancel this agreement. The customer must provide this cancellation in writing to the dealer.

**PUTTING YOUR CANCELLATION RIGHTS INTO PRACTICE**

**YOU MAY CANCEL THIS CONTRACT AT ANY TIME BEFORE MIDNIGHT OF THE THIRD BUSINESS DAY AFTER RECEIVING A COPY OF THIS CONTRACT. IF YOU WISH TO CANCEL THIS CONTRACT, YOU MUST:**

☐ **SEND A SIGNED AND DATED WRITTEN NOTICE OF CANCELLATION BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED; OR**

☐ **PERSONALLY HAND DELIVER A SIGNED AND DATED WRITTEN NOTICE OF CANCELLATION TO: Velocity Energy & Home Solutions, LLC**

**Note: If you cancel this contract within the three day period, you are entitled to a full refund of your money. Refunds must be made within 30-days of the contractor's receipt of the cancellation notice.**

## NOTICE OF CANCELLATION

**Date of Transaction**                                    **Lead/Customer Order #**

You may CANCEL this transaction, without any Penalty or obligation, within THREE (3) BUSINESS DAYS from the above date. The State Supplement contains a form to use if one is specifically prescribed by law in Your state.

If You cancel, any property traded in, any payments made by You under this contract or sale, and any negotiable instrument executed by You will be returned within TEN (10) BUSINESS DAYS following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be canceled.

If you cancel, you must make available to the seller at your residence, in substantially as good condition as when received, any goods delivered to you under this contract or sale, or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.

If you do make the goods available to the seller and the seller does not pick them up within TWENTY (20) CALENDAR DAYS of the date of your notice of cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.

To cancel this transaction, mail, deliver, or email a signed and dated copy of this cancellation notice, or any other written notice, or send a telegram to: Clean Cut General Contractors

**(Email Address/ Mobile # of seller(s) authorized representative)**        **Mobile #**

**(Print/type name of seller or seller's authorized representative)**

**(Address)**                          **(City)**        **(State)**        **(Zip)**

**NOT LATER THAN**

(Date – THREE (3) BUSINESS DAYS from the date of transaction)

**(Buyer's Signature)**

**I HEREBY CANCEL THIS TRANSACTION.**

**(Buyer's Signature)**

**(DATE)**_____

**EXHIBIT "H"**

SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (the "Agreement") is made and entered into as of the date of the last signature below (the "Effective Date") by and between Musa Konateh (hereinafter referred to as "Consumer") and Omniya, LLC (hereinafter referred to as "Company"). Consumer and Company may be individually referred to as a "Party" or collectively as the "Parties."

WHEREAS, Consumer agreed to a solar proposal by the Company, dated February 24, 2024 (the "Solar Agreement"), pursuant to which Company would install and arrange financing of solar equipment at Consumer's residence;

WHEREAS, a separate document dated February 24, 2024, purporting to be a financing agreement (the "Finance Agreement") between Consumer and GoodLeap, LLC (the "Finance Company") sets forth the terms pursuant to which Finance Company paid Velocity Energy & Home Solutions, Inc. (the "Installer") to install solar equipment at Consumer's residence;

WHEREAS, the Finance Company asserts that approximately $40,000.00 of principal indebtedness remains to be paid to it over the next 24 years (the "Principal Debt");

WHEREAS, Consumer, by and through counsel, sent a letter on May 27, 2025, via Certified Mail, Return Receipt Requested, to the Company, the Finance Company, and the Installer, stating that Consumer was rescinding and canceling the Solar Agreement and Finance Agreement;

WHEREAS, Consumer, by and through counsel, has advised the Company that he is prepared to pursue certain claims against Company, including but not limited to, allegations of unfair or deceptive acts and practices under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1, *et seq.*, and other claims against Company related to the Solar Agreement (the "Claims");

WHEREAS, no litigation has been filed as of the Effective Date;

WHEREAS, the Parties desire to enter into this Settlement Agreement in lieu of litigating Consumer's Claims against the Company and thereby avoid the uncertainty, time, and expense of potential litigation;

NOW, THEREFORE, in consideration of the mutual promises, covenants, and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. SETTLEMENT PAYMENT.
   a. Company agrees to assume responsibility for and pay off the Principal Debt and all associated interest, finance, penalty or other charges accruing after the Effective Date (the "Settlement Amount").
   b. Company shall commence payments to the Finance Company beginning with the payment due on July 26, 2025, and shall completely satisfy the Settlement

1

Doc ID: 5f0613b0c68569e1fff720b0abd2a3c22a6b87e1

Amount, resulting in no outstanding balance under the Finance Agreement, within twenty-four (24) months thereafter, or by July 26, 2027.  The date upon which Company notifies Consumer in writing that it has paid the Settlement Amount in full is referred to herein as the "Completion Date."

c.  Company shall make payments required by Section 1(b) directly to the Finance Company in accordance with the payment terms of the Finance Agreement or as otherwise agreed between Company and the Finance Company, subject to the payment requirements set forth in Section 1(b).

d.  Company shall provide written confirmation to Consumer of each payment made to the Finance Company within ten (10) days of such payment. Such written confirmation will be provided by email to mkonateh553@gmail.com and rballenger@clsphila.org.

e.  In the event that the Finance Company releases, cancels, forgives, or otherwise eliminates the Settlement Amount (including but not limited to a determination that the underlying transaction was invalid or that Consumer was not legally obligated to the Finance Company), Company's payment obligations under this Agreement shall immediately terminate to the extent of such release or cancellation. Consumer agrees to promptly notify Company in writing of any such release or cancellation within five (5) business days of Consumer's knowledge thereof.

2.  EXCLUSIVE BENEFIT; RELEASE BY CONSUMER. This Agreement, and the release contemplated pursuant hereto, is entered into for the exclusive benefit of the Parties hereto.  Consumer and Company explicitly agree that Consumer does not hereby release or suspend pursuit of any claims, suits, demands or other causes of action he may now or in the future have against the Finance Company or the Installer.  Consumer covenants and agrees that, within 10 business days of the Completion Date, Consumer will execute and deliver to Company the Release attached hereto as Exhibit A.

3.  SUSPENSION OF LITIGATION; TOLLING OF CLAIMS.  Provided Company does not default on this Agreement, as set forth in Section 7, Consumer agrees not to commence litigation against the Company regarding the Claims arising from the Solar Agreement and transactions related thereto.  Company agrees that any and all statutes of limitations and/or repose and any equitable claim of laches, whether arising by contract, statute, common law or otherwise, which might be asserted against it relating or pertaining in any manner to the alleged facts, circumstances, acts and omissions which gave rise to Consumer's Claims shall be tolled as of the Effective Date hereof through and including the Completion Date.

4.  NO ADMISSION OF LIABILITY. This Agreement is not and shall not be construed as an admission by Company of any liability or wrongdoing whatsoever. Company specifically disclaims any liability to Consumer or any other person.

5.  FINANCIAL ASSURANCE.  Company represents and warrants as follows:

2

Doc ID: 5f0613b0c68569e1fff720b0abd2a3c22a6b87e1

a. Company is solvent, is able to pay its debts as they become due, has capital sufficient to carry on its business as presently conducted and proposed to be conducted, and owns property and assets which have both a fair value and a fair saleable value in excess of the amount required to pay its debts as they become due.

b. Company knows of no eventualities that would prevent its performance of the obligations set forth in this Agreement.

c. Company does not have any pending, contemplated or ongoing administrative or judicial proceedings which are material to its business or finances, and is not currently subject to and does not anticipate becoming subject to any associated litigation, consent orders or agreements with any state or federal regulatory agency.

d. Company will not commence any bankruptcy, insolvency, or similar proceeding prior to the Completion Date.

e. In the event of the Company's bankruptcy, Company will not contest that the Settlement Amount is ineligible for discharge pursuant to the provisions of 11 U.S.C. §523(a)(2).

6. CONFIDENTIALITY. The Parties agree to keep the terms and conditions of this Agreement strictly confidential and shall not disclose them to any third party except: (a) as required by law or court order; (b) to their respective attorneys, accountants, or financial advisors who have a need to know; (c) to the Finance Company as necessary to effectuate the terms of this Agreement; or (d) to enforce the terms of this Agreement. Consumer agrees not to make any disparaging statements about Company or its products or services.

7. DEFAULT AND INDEMNIFICATION.

a. Company Default.  Company shall be deemed in default under this Agreement if:
    i. Company fails to make any payment to the Finance Company when due and such failure is not corrected within the period permitted by the Finance Company;
    ii. Company commences any bankruptcy, insolvency, or similar proceeding, or has such proceeding commenced against it that is not dismissed within sixty (60) days;
    iii. Company makes an assignment for the benefit of creditors; or
    iv. Company otherwise becomes insolvent or unable to pay its debts as they become due.

b. Indemnification by Company. Company hereby agrees to defend, indemnify, and hold Consumer harmless from and against any and all losses, damages, liabilities, costs, and expenses (including reasonable attorneys' fees and court costs) arising from or related to:
    i. Company's failure to make any payment to the Finance Company as required under this Agreement;

Doc ID: 5f0613b0c68569e1fff720b0abd2a3c22a6b87e1

      ii. Any action taken by the Finance Company against Consumer as a result of Company's default or failure to perform its obligations under this Agreement;

      iii. Any damage to Consumer's credit rating or financial standing resulting from Company's failure to make payments to the Finance Company as required;

      iv. Any collection actions, legal proceedings, or other enforcement measures taken by the Finance Company against Consumer due to Company's default under this Agreement.

  c. Notification. Consumer agrees that, if he receives notification from Finance Company regarding late payment or allegation of default, he will promptly inform Company of such notification.

  d. Survival of Indemnification. The indemnification obligations set forth in this Section 7 shall survive the termination or expiration of this Agreement and shall remain in full force and effect until all obligations under the Finance Agreement have been satisfied or until the Finance Company provides written acknowledgment that Consumer has no liability to it.

8. REPRESENTATIONS AND WARRANTIES. Each Party represents and warrants that:

  a. They have the full legal right, power, and authority to enter into and perform their obligations under this Agreement;

  b. The execution, delivery, and performance of this Agreement have been duly authorized by all necessary corporate or individual actions;

  c. This Agreement constitutes a valid and binding obligation, enforceable in accordance with its terms.

9. ENTIRE AGREEMENT. This Agreement contains the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements and understandings, whether written or oral, between the Parties with respect to the subject matter hereof.

10. AMENDMENTS. This Agreement may not be amended, modified, altered, or supplemented except by means of a written instrument executed by both Parties.

11. SEVERABILITY. If any provision of this Agreement is held to be invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

12. GOVERNING LAW. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, without giving effect to any choice of law or conflict of law provisions.

13. CONSENT TO JURISDICTION AND VENUE. Each of the Parties agrees that any suit, action, or proceeding arising out of this Agreement may be instituted against it in the Court of Common Pleas, Philadelphia County, Pennsylvania. Each of the Parties hereby waives any objection that it may have to the venue of any such suit, action, or

Doc ID: 5f0613b0c68569e1fff720b0abd2a3c22a6b87e1

proceeding, and each of the Parties hereby irrevocably consents to the personal jurisdiction of such court in any such suit, action, or proceeding.

14. NOTICES. Except as provided in Section 1(d), all notices required or permitted under this Agreement shall be in writing, sent by United States mail, postage prepaid, and addressed as follows:

    a.  If to Consumer:

    Musa Konateh
    6401 Guyer Ave
    Philadelphia, PA 19142
    (with a copy by email to mkonateh553@gmail.com)

    With a copy to:

    Robert Ballenger
    Community Legal Services, Inc.
    1410 W. Erie Ave
    Philadelphia, PA 19140
    (with a copy by email to rballenger@clsphila.org)

    b.  If to Company:

    Omniya, LLC
    200 Grove Road, Suite C
    West Deptford, NJ 08066
    (with a copy by email to csandone@omniyasolar.com)

15. COUNTERPARTS. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile or electronic signatures shall be deemed original signatures.

16. FURTHER ASSURANCES. The Parties agree to execute such other documents as may be necessary or appropriate to effectuate the purposes and intent of this Agreement.

[Signature Page Follows]

Doc ID: 5f0613b0c68569e1fff720b0abd2a3c22a6b87e1

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date.


CONSUMER: _____
Musa Konateh
Date: _____

*Corey Sandone*
COMPANY: _____
By: Corey Sandone
Title: CEO_____
Omniya, LLC
Date: __07 / 23 / 2025_____

6

Doc ID: 5f0613b0c68569e1fff720b0abd2a3c22a6b87e1

EXHIBIT A

## GENERAL RELEASE

Musa Konateh (the "Consumer") hereby tenders this General Release to Omniya, LLC (the "Company"), pursuant to the terms and conditions of the Settlement Agreement, dated as of July __, 2025 (the "Agreement"), by and between Consumer and the Company.  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them by the Agreement.

WHEREAS, Consumer and the Company entered into the Agreement in order to satisfy the Settlement Amount associated with the Finance Agreement;

WHEREAS, the Settlement Amount was satisfied as of _____, 202_;

WHEREAS, pursuant to Section 2 of the Agreement, Consumer is obligated to execute and deliver this General Release to the Company following satisfaction of the Settlement Amount;

NOW, THEREFORE, in consideration of the mutual promises, covenants, and agreements set forth in the Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Consumer desires to release Company as follows:

TERMS

By signing below, Consumer, on behalf of himself and his heirs, executors, administrators, successors, and assigns, hereby fully and forever releases and discharges the Company and its past, present, and future officers, directors, shareholders, members, employees, agents, attorneys, insurers, affiliates, successors, and assigns, from any and all claims, demands, liens, agreements, contracts, covenants, actions, suits, causes of action, obligations, controversies, debts, costs, expenses, damages, judgments, orders, and liabilities of whatever kind or nature in law, equity, or otherwise, whether now known or unknown, suspected or unsuspected, and whether or not concealed or hidden, which Consumer now owns or holds, or has at any time heretofore owned or held, or may in the future hold against Company arising out of or in any way connected with the Purchase Agreement, the Claims, or any other matter related to the purchase of home equipment from Company; provided, however, that this release does not extend to any claims against any other parties not specifically released herein, as this Agreement does not release any parties other than Company and its officers, directors, shareholders, members, employees, agents, attorneys, insurers, affiliates, successors, and assigns.

Signed: _____
       Musa Konateh

Date: _____

Doc ID: 5f0613b0c68569e1fff720b0abd2a3c22a6b87e1

 **Dropbox** Sign

Audit trail

| | |
|---|---|
| **Title** | Omniya Settlement Agreement FINAL.pdf |
| **File name** | Omniya%20Settleme...ement%20FINAL.pdf |
| **Document ID** | 5f0613b0c68569e1fff720b0abd2a3c22a6b87e1 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

This document was requested from app.clio.com

## Document History

| | | |
|---|---|---|
| SENT | **07 / 23 / 2025**<br>20:17:47 UTC | Sent for signature to Corey Sandone (csandone@omniyasolar.com) from beth@phillysmallbusinesslawyer.com IP: 67.8.90.221 |
| VIEWED | **07 / 23 / 2025**<br>20:18:26 UTC | Viewed by Corey Sandone (csandone@omniyasolar.com) IP: 23.30.105.244 |
| SIGNED | **07 / 23 / 2025**<br>20:20:56 UTC | Signed by Corey Sandone (csandone@omniyasolar.com) IP: 23.30.105.244 |
| COMPLETED | **07 / 23 / 2025**<br>20:20:56 UTC | The document has been completed. |

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date.

CONSUMER: *M. Konateh*
Musa Konateh
Date: _07/23/2025_

COMPANY: *Corey Sandone*
By: Corey Sandone
Title: _CEO_
Omniya, LLC
Date: _07 / 23 / 2025_

6

Doc ID: 0baa34c228018af9faf6cf53a4a2f027e3695452

**Dropbox Sign**

Audit trail

| | |
|---|---|
| **Title** | konateh signature page.pdf |
| **File name** | konateh%20signature%20page.pdf |
| **Document ID** | 0baa34c228018af9faf6cf53a4a2f027e3695452 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

This document was requested from app.clio.com

## Document History

**SENT**
**07 / 23 / 2025**
20:18:21 UTC
Sent for signature to Corey Sandone (csandone@omniyasolar.com) from beth@phillysmallbusinesslawyer.com
IP: 67.8.90.221

**VIEWED**
**07 / 23 / 2025**
20:21:02 UTC
Viewed by Corey Sandone (csandone@omniyasolar.com)
IP: 23.30.105.244

**SIGNED**
**07 / 23 / 2025**
20:21:28 UTC
Signed by Corey Sandone (csandone@omniyasolar.com)
IP: 23.30.105.244

**COMPLETED**
**07 / 23 / 2025**
20:21:28 UTC
The document has been completed.

Powered by **Dropbox Sign**

**EXHIBIT "I"**

NEW JERSEY DEPARTMENT OF THE TREASURY
DIVISION OF REVENUE AND ENTERPRISE SERVICES

## CERTIFICATE OF FORMATION

## OMNIYA HOLDINGS LLC
## 0451321532

The above-named DOMESTIC LIMITED LIABILITY COMPANY was duly filed in accordance with New Jersey State Law on 07/30/2025 and was assigned identification number 0451321532. Following are the articles that constitute its original certificate.

**1. Name:**
OMNIYA HOLDINGS LLC

**2. Registered Agent:**
BRANDON ETZLER

**3. Registered Office:**
30 HIGHLAND AVE
SICKLERVILLE, NEW JERSEY 08081

**4. Business Purpose:**
OMNIYA HOLDINGS LLC IS A MANAGEMENT AND OWNERSHIP COMPANY FOR MULTIPLE HOME SERVICES AND RENEWABLE ENERGY BUSINESSES.

**5. Effective Date of this Filing is:**
07/30/2025

**6. Members/Managers:**
COREY SANDONE
2 SHERWOOD LANE
GLASSBORO, NEW JERSEY 08028


BRANDON ETZLER
30 HIGHLAND AVE
SICKLERVILLE, NEW JERSEY 08081

**7. Main Business Address:**
2 SHERWOOD LANE
GLASSBORO, NEW JERSEY 08028

**Signatures:**

COREY SANDONE
AUTHORIZED REPRESENTATIVE

BRANDON ETZLER
AUTHORIZED REPRESENTATIVE

NEW JERSEY DEPARTMENT OF THE TREASURY
DIVISION OF REVENUE AND ENTERPRISE SERVICES

## CERTIFICATE OF FORMATION

### OMNIYA HOLDINGS LLC
### 0451321532



*IN TESTIMONY WHEREOF, I have*
*hereunto set my hand and*
*affixed my Official Seal*
*30th day of July, 2025*

*Elizabeth Maher Muoio*
*State Treasurer*

*Certificate Number : 4287758435*
*Verify this certificate online at*
*https://www1.state.nj.us/TYTR_StandingCert/JSP/Verify_Cert.jsp*

**EXHIBIT "J"**

# Payments History

See posted and pending payments. Pending payments take 24-48 hours to post to the account.

| 09/29/2025 | $185.00 |
|---|---|
| 🏛 **** 2451 | One Time |

| 09/29/2025 | $184.41 |
|---|---|
| 🏛 **** 2451 | One Time |

| 08/15/2025 | $184.41 |
|---|---|
| 🏛 **** 3758 | One Time |

| 07/23/2025 | $174.99 |
|---|---|
| 🏛 **** 7782 | One Time |

| 06/26/2025 | $174.99 |
|---|---|
| 🏛 **** 0958 | Autopay |

| 05/26/2025 | $174.99 |
|---|---|
| 🏛 **** 0958 | Autopay |

| 04/26/2025 | $174.99 |
|---|---|
| 🏛 **** 0958 | Autopay |

**EXHIBIT "K"**

*STATE OF NEW JERSEY*
*DEPARTMENT OF THE TREASURY*
*DIVISION OF REVENUE AND ENTERPRISE SERVICES*
*CERTIFICATE OF DISSOLUTION*

*Title N.J.S.A 42:2C-1 et seq.*

*OMNIYA LLC*
*0450874566*

The Division of Revenue and Enterprise Services acknowledges that the above-named business entity did file and record a Certificate of Dissolution with this office on 09/24/2025, stating its intention to continue with its existence for the sole purpose of winding up its affairs, after which a Certificate of Termination will be filed for the purpose of terminating the existence of the business entity.

1. **Name:** OMNIYA LLC

2. **Date of Formation:** 10/13/2022

Once the wind up activities are completed, the company MUST file a Certificate of Termination.  Please file online at Https://www.njportal.com/dor/annualreports.

The undersigned represents that the filing complies with State laws detailed in Title 42:2C and that they are authorized to sign this form on behalf of the Limited Liability Company.

**Filed Date:** 09/24/2025

**Signature and Title**

Corey Sandone, Member

*IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my Official Seal, this 24th day of September, 2025*

*Elizabeth Maher Muoio*
*State Treasurer*

Certificate Number : 2928764890
*Verify this certificate online at*
*https://www1.state.nj.us/TYTR_StandingCert/JSP/Verify_Cert.jsp*

**EXHIBIT "L"**



November 12, 2025

Corey Sandone, CEO
Omniya, LLC
200 Grove Road, Suite C
West Deptford, NJ 08066

I am writing to provide notice pursuant to Section 14 of the July 23, 2025, Settlement Agreement between my client, Musa Konateh, and Omniya, LLC. As you are aware, Omniya is obligated to make payment to GoodLeap, LLC monthly pursuant to Section 1 of the Settlement Agreement. No payment was made for October 2025, and the associated account with GoodLeap is now past due. In advance of sending this letter, I emailed you on November 7 and November 10, as a courtesy, but received no response.

Pursuant to the GoodLeap financing agreement, terms of which are incorporated into the default provisions of Section 7 of the Settlement Agreement, a default occurs if payment is not made within fifteen days of the due date. The October payment was due on October 26, which means a default occurred when no payment was made by Monday, November 10.

If Omniya does not make adequate payment to cure the missed October payment and bring the account current, we will proceed with litigation against Omniya, its members, and related individuals and entities to enforce the Settlement Agreement and pursue damages and attorneys' fees, including for breach of the settlement, tortious interference with contract, and other claims.

Sincerely,

Robert W. Ballenger
Energy & Utilities Attorney

*For Musa Konateh*

Cc:     Corey Sandone (csandone@omniyasolar.com)
        2 Sherwood Lane
        Glassboro, NJ 08028

        Brandon Etzler
        30 Highland Ave
        Sicklerville, NJ 08081